UNITED STATES, Appellee

v.

Damien B. SHAW, Lance Corporal
U.S. Marine Corps, Appellant

No. 06-0403

Crim. App. No. 200300312

United States Court of Appeals for the Armed Forces

Argued January 8, 2007

Decided April 24, 2007

BAKER, J., delivered the opinion of the Court, in which STUCKY
and RYAN, JJ., joined.  EFFRON, C.J., filed a dissenting opinion
in which ERDMANN, J., joined.


Counsel


For Appellant:  Captain Rolando R. Sanchez, USMC (argued).


For Appellee:  Captain Geoffrey S. Shows, USMC (argued);
Commander Paul LeBlanc, JAGC, USN (on brief); Commander Charles
N. Purnell II, JAGC, USN, and Major Kevin C. Harris, USMC.


Military Judge:  M. J. Griffith


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Shaw, No. 06-0403/MC

Judge BAKER delivered the opinion of the Court.

In accordance with his pleas, Appellant was convicted by a special court-martial of failure to obey a no-contact order, wrongful use of cocaine, adultery, and breaking restriction in violation of Articles 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 934 (2000), respectively.  A military judge sitting alone sentenced Appellant to a bad-conduct discharge, confinement for ninety days and reduction to pay grade E-1.  The convening authority approved the sentence as adjudged and the United States Navy-Marine Corps Court of Criminal Appeals affirmed.[1]  United States v. Shaw, No. NMCCA 200300312 (N-M. Ct. Crim. App. Jan. 11, 2006).  Upon Appellant's petition, this Court specified the following issue based on matters raised in his unsworn statement:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY
> FAILING TO INQUIRE INTO THE EFFECT THAT APPELLANT'S
> MEDICAL PROBLEMS HAD ON HIS ABILITY TO APPRECIATE THE
> NATURE AND QUALITY OR THE WRONGFULNESS OF HIS ACTS.

We conclude that the military judge did not err in this regard and affirm.

---

[1] The convening authority suspended confinement in excess of sixty days for twelve months.

I

After the findings of guilty were announced, Appellant, with the assistance of counsel, made an unsworn statement for the military judge's consideration on sentencing. The part of the statement relevant to the specified issue states:

> Sir, on the 20th of November 2001, I was jumped outside of the Waffle Shop out in town and robbed. I was hit in the head repeatedly with a lead pipe. I suffered two skull fractures, bruising and bleeding of the brain. I woke up several days later out of a coma to find out that I am completely deaf in my left ear, and partially blind in my left eye. I was hospitalized for about a month. Upon returning to my unit from the hospital, I went and saw the division psychiatry [sic] and was diagnosed with bi-polar syndrome because of the incident. After that I was denied convalescent leave and only given eight days annual leave for Christmas. I came back, and that's when I started to get in trouble.

After Appellant completed his statement, his defense counsel asked him specific questions regarding the injuries he received as a result of the assault:

> DC:  And how long did you stay in the Veterans hospital?
>
> ACC:  I was in the Veterans Hospital for 22 days, sir.
>
> DC:  And what -- did they tell you the extent of the injuries?
>
>  . . . .
>
> ACC:  A contusion to the front of the brain which basically means bruising. The back of my brain was bleeding and swelling. I had an inner skull fracture on my left side, and another skull fracture on the back of my head, sir. I

3

>           completely lost all my hearing in my left ear,
>           and part of my sight in my left eye, sir.
>
>           . . . .
>
>    DC:    And do these injuries still effect [sic] you
>           today?
>
>    ACC:   Yes, sir.

This concluded Appellant's unsworn statement, and the hearing proceeded to announcement of the sentence.  In response to the specified issue Appellant asserts that the findings and sentence should be set aside for the military judge's failure to inquire further into Appellant's statement regarding his diagnosis for bipolar disorder.

## II

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion."  United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F. 1996) (citing United States v. Gallegos, 41 M.J. 446 (C.A.A.F. 1995)).  "Pleas of guilty should not be set aside on appeal unless there is 'a "substantial basis" in law and fact for questioning the guilty plea.'"  Id. (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).  "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea."  United States v. Garcia, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2000)); Rule

for Courts-Martial (R.C.M.) 910(h)(2). "Once the military judge has accepted a plea as provident and has entered findings based on it, an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements or other evidence of record." Garcia, 44 M.J. at 498. "A 'mere possibility' of such a conflict is not a sufficient basis to overturn the trial results." Id. (quoting Prater, 32 M.J. at 436).

As in United States v. Phillippe, 63 M.J. 307 (C.A.A.F. 2006), of last term, we are again called upon to determine whether the military judge's duty to inquire further has been triggered by disclosures made during, or subsequent to, the plea colloquy. In Phillippe, we held that "when, either during the plea inquiry or thereafter, and in the absence of prior disavowals . . . circumstances raise a possible defense, a military judge has a duty to inquire further to resolve the apparent inconsistency." Id. at 310-11 (citation omitted). The existence of an apparent and complete defense is necessarily inconsistent with a plea of guilty. This was the case in Phillippe, where early termination of the alleged period of unauthorized absence was raised, presenting an apparent ambiguity or inconsistency with the plea thereby warranting further inquiry. Id. at 311; see also United States v. Pinero, 60 M.J. 31, 35 (C.A.A.F. 2004); United States v. Reeder, 22

5

C.M.A. 11, 12-13, 46 C.M.R. 11, 12-13 (1972). The question in this case is whether Appellant's reference to his bipolar condition in the plea context "set[] up matter raising a possible defense," as in Phillippe, or whether it presented only a "mere possibility" of a defense, as in Prater. Phillippe, 63 M.J. at 310-11; Prater, 32 M.J. at 436-37.

On the one hand, the injuries Appellant describes are as graphic as they are unfortunate. One is tempted, without more, to conclude that injuries of this magnitude must surely raise a possible mental responsibility defense. Moreover, in military law, given that lack of mental responsibility is an affirmative defense, mental health issues bear special status. This is reflected in R.C.M. 706 and Military Rule of Evidence (M.R.E.) 302.[2] This status in part reflects the recognition that combat and other operational conditions may generate or aggravate certain mental health conditions, such as post traumatic stress disorder. As a result, military judges should take particular

---

[2] R.C.M. 706(a) imposes an obligation not only on defense counsel but also on any commander, investigating officer, trial counsel, military judge or member to notify the officer authorized to order a mental exam when "there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial." M.R.E. 302(a) provides a limited privilege to the accused who participates in an R.C.M. 706 examination even if a rights warning has been provided under Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2000). These two examples distinguish mental responsibility from other affirmative defenses.

care to make sure that considerations of mental health do not put the providence of the plea at issue.

On the other hand, in this case, Appellant's assertion that his plea was improvident rests entirely on his unsworn statement, in which he states that he was diagnosed with bipolar disorder.  Thus, unlike the circumstance we encountered in United States v. Harris, 61 M.J. 391, 392-94 (C.A.A.F. 2005), there was no factual record developed during or after the trial substantiating Appellant's statement or indicating whether and how bipolar disorder may have influenced his plea.  Nor did Appellant's conduct during the plea inquiry raise concerns that might have suggested to the military judge that Appellant lacked the capacity to plead.  If so, this might have prompted the military judge to inquire into Appellant's mental responsibility at the time of the offenses.  Moreover, Appellant has not asserted, nor does his statement reflect, that he was unable to appreciate the nature and quality or wrongfulness of his acts as a result of a mental disease or defect.  Thus, unlike the situation in Phillippe, where the appellant's statement raised the possibility of a complete defense of early termination to the charged term of absence, Appellant's statement without more, did not raise an apparent inconsistency with his plea.

In such a circumstance, the military judge may reasonably rely on both a presumption that the accused is sane[3] and the long-standing principle that counsel is presumed to be competent. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. Scott, 24 M.J. 186, 188 (C.M.A. 1987). Moreover, the President has assigned the burden of proving lack of mental responsibility to the accused. R.C.M. 916(b). Thus, when the accused is presenting his sentencing statement through or with the assistance of counsel, the military judge may properly presume, in the absence of any indication to the contrary, that counsel has conducted a reasonable investigation into the existence of the defense. This is particularly so when the matter raised does not in and of itself present an apparent or possible defense.

Appellant points to our decisions in United States v. Martin, 56 M.J. 97 (C.A.A.F. 2001), and Harris, 61 M.J. at 391, for the proposition that "[t]he military judge must have known that a bipolar disorder was a viable defense for Appellant." However, these cases establish that bipolar disorder, like other disorders, may exist with enough severity to raise a substantial question regarding the issue of the accused's mental responsibility. However, the disorder does not negate

---

[3] "The accused is presumed to be mentally responsible at the time of the alleged offense." R.C.M. 916(k)(3)(A).

responsibility in all cases.  Martin was a contested case in which the defense was attempting to carry its burden of proving lack of mental responsibility due to the severity of the accused's bipolar condition.  56 M.J. at 100-01.  Two defense psychiatrists testified that Martin's condition was severe enough that he was unable to appreciate the nature and quality or wrongfulness of his conduct.  Id.  Conversely, three government psychiatrists testified that Martin could appreciate the wrongfulness of his acts at the time of the offenses.  Id. at 101.  The question was whether Martin had carried his burden in proving the defense of lack of mental responsibility by clear and convincing evidence, and we concluded that a reasonable jury could have concluded that he did not.  Id. at 110.

In Harris, a pretrial examination conducted pursuant to R.C.M. 706 concluded that the accused had not suffered from a severe mental defect or disease and that he had been mentally responsible at the time of the offenses.  61 M.J. at 393.  He was subsequently convicted in accordance with his pleas.  Id. at 392.  After the court-martial, and while Harris was serving his sentence to confinement, another mental health expert concluded that Harris had suffered from bipolar disorder, that this was a severe mental disease at the time of the offenses, and that he could not appreciate the wrongfulness of his conduct.  Id. at 393.  The doctor's concern was documented in the record, and

highlighted by Harris's behavior of polishing his cell with a sock. Id. Thus, in Harris, the military judge was confronted with two conflicting, confirmed, and documented medical conclusions. These conclusions were the subject of a post-trial session pursuant to Article 39(a), UCMJ,[4] after which, notwithstanding the conflicting conclusions, the military judge determined that the previous guilty plea had been entered providently. Id. After the post-trial Article 39(a), UCMJ, session, the convening authority ordered yet another examination pursuant to R.C.M. 706. Id. at 394. That psychiatrist concluded that Harris had suffered from a severe mental disease, i.e., bipolar disorder, at the time of the offenses but that he had been able to appreciate the nature and quality or wrongfulness of his conduct. Id. The issue in the case was whether the conflicting post-trial examinations and related medical evidence, which were themselves in conflict with the pretrial examination, supported a petition for a new trial under R.C.M. 1210(f)(2). Id. at 397. We held that they did and granted the petition for a new trial. Id. at 398-99.

Martin and Harris entailed substantially more than a passing reference to a diagnosis of bipolar disorder.[5] Nor, has

---

[4] 10 U.S.C. § 839(a) (2000).

[5] Appellant states in his unsworn statement that after the assault, "that's when I started to get in trouble." However,

10

Appellant to date offered any indication that his disorder raises a substantial question regarding his mental responsibility.  As a result, we conclude that Appellant's reference to his diagnosis of bipolar disorder, without more, at most raised only the "mere possibility" of a conflict with the plea.  Whether a conflict has actually arisen or not, it may be prudent for a military judge to conduct further inquiry when a significant mental health condition is raised during the plea inquiry in light of military law and practice regarding mental health issues and to obviate such issues on appeal.  Whether further inquiry is required as a matter of law is a contextual determination.  In this case, we hold that the military judge did not abuse his discretion in not doing so.[6]

DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

the record reveals, and Appellant concedes, that he received nonjudicial punishment on October 10, 2001, for an unauthorized absence of twenty days.  This was obviously before the assault of November 20, 2001, and was evidence the military judge had before him when Appellant made his unsworn statement.

[6] Appellant also claims the reference in his unsworn statement to bipolar disorder raised the issue of his mental capacity at the time of trial.  As stated earlier, the record is devoid of any indicator that would have given the military judge reason to believe that Appellant lacked capacity to stand trial.  See R.C.M. 706(a).

United States v. Shaw, No. 06-0403/MC

EFFRON, Chief Judge, with whom ERDMANN, Judge, joins (dissenting):

Appellant's assertion that he suffered from bipolar disorder raised an apparent inconsistency with respect to his plea, thereby triggering the military judge's duty to conduct a further inquiry. United States v. Phillippe, 63 M.J. 307, 309-11 (C.A.A.F. 2006). The military judge erred in failing to resolve this inconsistency. Accordingly, I respectfully dissent.


I.   BACKGROUND

A.   The Guilty Plea Process

Congress has established special procedures to ensure the validity of guilty pleas in the military justice system. Article 45(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 845(a) (2000), provides that the trial court shall enter a plea of not guilty, despite the accused's guilty plea, if the accused "after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect . . . ."

Rule for Courts-Martial (R.C.M.) 910(h)(2) underscores the military judge's obligation by requiring that "[i]f after findings but before the sentence is announced the accused makes

a statement to the court-martial, in testimony or otherwise, or presents evidence which is inconsistent with a plea of guilty on which a finding is based, the military judge shall inquire into the providence of the plea."  Our Court has noted the importance of requiring special attention to guilty pleas in the military justice system because "'there may be subtle pressures inherent to the military environment that may influence the manner in which servicemembers exercise (and waive) their rights.'"  Phillippe, 63 M.J. at 310 (quoting United States v. Pinero, 60 M.J. 31, 33 (C.A.A.F. 2004)).  "'The providence inquiry and a judge's explanation of possible defenses are established procedures to ensure servicemembers knowingly and voluntarily admit to all elements of a formal charge.'"  Id. (quoting Pinero, 60 M.J. at 33).

   B.  Plea Inquiries Involving Mental Responsibility

   In a contested trial, the defense of lack of mental responsibility requires the accused to demonstrate that, at the time of the alleged offenses, the accused:  (1) suffered from a severe mental disease or defect, and (2) as a result of that disease or defect was unable to appreciate the nature and quality or the wrongfulness of the charged acts.  Article 50a(a), UCMJ, 10 U.S.C. § 850a(a) (2000).  In the context of a providence inquiry, however, the responsibility for assessing whether there is reason to believe that the defense may arise

2

rests with the military judge. R.C.M. 706(a) provides in pertinent part that:

> If it appears to [the] . . . military judge . . .
> that there is reason to believe that the accused
> lacked mental responsibility for any offense
> charged or lacks capacity to stand trial, that
> fact and the basis of the belief or observation
> shall be transmitted through appropriate channels
> to the officer authorized to order an inquiry
> into the mental condition of the accused.

A statement by the accused triggers the military judge's responsibility to conduct a further inquiry when it raises the possibility that a defense may apply. The accused's statement need not assert a complete defense. Phillippe, 63 M.J. at 310. Rather, it must only "set[] up matter raising a possible defense." Id.; Article 45(a), UCMJ.

Once a statement by the accused raises the possibility that a defense may apply, the military judge has an affirmative obligation to resolve any apparent ambiguity or inconsistency by conducting further inquiry. Article 45(a), UCMJ. If, upon such inquiry, it appears that the accused may have a defense of lack of mental responsibility or may lack mental capacity at the time of trial, the military judge must determine whether to order psychological testing by a sanity board. R.C.M. 706(a); R.C.M. 916(k)(3)(B). This obligation distinguishes lack of mental responsibility from other affirmative defenses. See generally R.C.M. 916(k) (the military judge is not required to assess the

3

need for specialized, nonjudicial evaluation for any affirmative defense except lack of mental responsibility).

## II.  APPELLANT'S TRIAL

The charged offenses concerned events that transpired between March 10, 2002, and April 11, 2002.  Appellant pled guilty to the charged offenses at a special court-martial before a military judge sitting alone.  At the start of the proceedings, the military judge summarized an off-the-record conference conducted under R.C.M. 802, during which the parties discussed "potential [extenuation and mitigation] evidence requested by the defense, the medical records of the accused, and it not having arrived yet, and what we would do about that." The record supplies no further information about the medical records, including whether the military judge was informed of their contents and the reasons why counsel thought the medical records would be useful in extenuation and mitigation.

Following the summary of the R.C.M. 802 session, Appellant entered pleas of guilty to all charges and the military judge conducted a providence inquiry.  Appellant said nothing during the providence inquiry that would have led the military judge to question his mental capacity or mental responsibility.  The military judge accepted Appellant's pleas as provident and found him guilty of all charges and specifications.

During the sentencing proceedings, Appellant made an unsworn statement under R.C.M. 1001(c)(2)(C), in which he recounted the injuries he sustained in an assault that occurred on November 20, 2001, approximately four months before the dates of the charged offenses. Appellant stated that he was hit repeatedly in the left side and back of the skull with a lead pipe during the assault. According to Appellant, he lost consciousness after the first blow and fell to the concrete floor. Appellant regained consciousness four or five days after the attack. He spent the next three weeks in the Hunter McGuire Veterans Hospital in recovery.

Appellant's injuries included an inner skull fracture on the left side of his head, a second fracture on the back of the skull, a contusion to the front of the brain, bleeding and swelling to the back of the brain, complete deafness in his left ear, partial blindness in his left eye, and memory loss. Upon returning to his unit, Appellant met with a psychiatrist and was diagnosed with bipolar syndrome. At the time of the charged offenses, he was awaiting a medical discharge because his injuries prevented him from sufficiently performing his duties.

Upon conclusion of the statement, the military judge thanked Appellant. The military judge made no further comment on the statement before proceeding to hear argument on sentencing.

III.  DISCUSSION

A statement by the accused need not set up a complete defense in order to trigger the obligation of the military judge to conduct a further inquiry.  The obligation arises if the statement by the accused "'sets up matter inconsistent with the plea.'"  United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991) (quoting Article 45(a), UCMJ).

In Phillippe, we addressed the issue of "whether the military judge should have inquired further into the providence of Appellant's plea, in light of his unsworn statement."  63 M.J. at 310.  We emphasized that:

> Even if an accused does not volunteer all the facts
> necessary to establish a defense, if he sets up
> matter raising a possible defense, then the military
> judge is obligated to make further inquiry to resolve
> any apparent ambiguity or inconsistency.  Only after
> the military judge has made this inquiry can he then
> determine whether the apparent inconsistency or
> ambiguity has been resolved.

Id. (citing Prater, 32 M.J. at 436) (emphasis added).

Appellant told the military judge that he had been diagnosed with bipolar disorder.  When Appellant made this statement, the military judge was placed on notice that Appellant might suffer from a severe mental disease or defect within the meaning of Article 50a(a), UCMJ.  See United States v. Harris, 61 M.J. 391, 394, 398 (C.A.A.F. 2005); United States v. Martin, 56 M.J. 97, 100, 103 (C.A.A.F. 2001) (recognizing

6

that bipolar disorder may constitute a severe mental disease or defect). Particularly in the context of Appellant's description of the assault that he had suffered, his statement fell squarely within the spectrum of matters requiring further exploration by the military judge because it set up a "matter inconsistent with the plea." Article 45(a), UCMJ.

At this point, the military judge was confronted with two key questions. First, whether Appellant's bipolar disorder was of sufficient gravity to constitute a severe mental disease or defect. Second, if Appellant did suffer from a severe mental disease or defect, whether that disease or defect caused him to fail to understand the nature and quality or wrongfulness of his acts. Article 50a(a), UCMJ.

Once Appellant raised his inconsistent statement, the military judge could have pursued one of three options. First, he could have conducted an inquiry regarding Appellant's bipolar disorder with Appellant or trial defense counsel that satisfied the military judge that the defense of lack of mental responsibility did not apply. R.C.M. 916(k)(3)(B). If, after conducting such an inquiry, he determined that the defense did not apply, he could resume the sentencing proceedings on the basis that the plea was provident. Second, he could have ordered a sanity board pursuant to R.C.M. 706(a) to explore whether the defense of lack of mental responsibility applied.

Third, if the military judge determined that the lack of mental responsibility defense did in fact apply, he could have permitted Appellant to withdraw his plea under Article 45(a), UCMJ, and R.C.M. 910(h)(2) and proceed to trial on the merits.

The military judge erred in failing to adhere to the requirements for a further inquiry under R.C.M. 706(a) and 910(h)(2). As a result, we are not in a position to determine which of the above three options would have been appropriate absent this error. As we stated in Phillippe, before a court can determine that the defense in question applies, "there must be adequate facts on the record." 63 M.J. at 310 n.3. Under these circumstances, we should set aside the findings and sentence and authorize a rehearing at which these options could be properly evaluated.