UNITED STATES, Appellee

v.

Jeremy M. PHILLIPPE, Private
U.S. Army, Appellant

No. 05-0674

Crim. App. No. 20040616

United States Court of Appeals for the Armed Forces

Argued March 21, 2006

Decided July 18, 2006

BAKER, J., delivered the opinion of the Court, in which GIERKE,
C.J., and CRAWFORD, EFFRON, and ERDMANN, JJ., joined.


Counsel

For Appellant:  Captain Stephen P. Watkins (argued); Colonel
John T. Phelps II, Lieutenant Colonel Kirsten V. C. Brunson, and
Captain Billy B. Ruhling II (on brief).

For Appellee:  Captain Flor M. Suarez (argued); Lieutenant
Colonel Theresa A. Gallagher and Major William J. Nelson (on
brief).


Military  Judge:  Gregory A. Gross


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v Phillippe, No. 05-0674/AR

Judge BAKER delivered the opinion of the Court.

Appellant was tried by special court-martial before a military judge alone. In accordance with his pleas, he was convicted of one specification of unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886 (2000). The adjudged and approved sentence included a bad-conduct discharge, confinement for ninety days, forfeitures of $795.00 pay per month for three months, and reduction to grade E-1. The United States Army Court of Criminal Appeals found no error and affirmed. United States v. Phillippe, No. ARMY 20040616, slip op. at 4 (A. Ct. Crim. App. July 26, 2005). We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN ACCEPTING THE APPELLANT'S PLEA OF GUILTY TO A PERIOD OF UNAUTHORIZED ABSENCE FROM 24 JULY 2001 TO 31 MARCH 2004 WHEN, IN SENTENCING, APPELLANT INDICATED THAT HE RETURNED OR ATTEMPTED TO RETURN TO MILITARY CONTROL ON THREE SEPARATE OCCASIONS DURING THE CHARGED PERIOD OF UNAUTHORIZED ABSENCE.

We hold that the military judge erred in accepting Appellant's guilty plea with respect to the termination date. However, we affirm guilt to a shorter period of unauthorized absence, and we remand to the United States Army Court of Criminal Appeals for reassessment under United States v. Sales, 22 M.J. 305, 307-08 (C.M.A. 1986).

2

BACKGROUND

Appellant pled guilty to an unauthorized absence from July 24, 2001 to March 31, 2004. During the plea inquiry, Appellant stated to the military judge that, after he requested and was denied leave, he left without authority to pursue his fiancée.[1] The military judge accepted Appellant's guilty plea and found him guilty by exceptions and substitutions with regard to the termination date.[2] During sentencing, Appellant opted to make an unsworn statement in which he said:

> I also tried to turn myself in while I was up there [in Montana] at an Air Force Base, after the 9/11 bombing, but they just told me there was nothing they could do for me because there was no warrant out for my arrest and I did not have my military ID card on me. That they -- there was nothing to do, I would just have to wait until something happened. And then, I finally made -- got the means to get back to Illinois around June or July of 2002, sir. And I went back to Illinois and tried to meet up with the hometown recruiter who recruited me into the military. He ended up telling me I was to sign papers and he was supposedly faxing them down to here trying to help me take care of my situation, which nothing ever got done

---

[1] In his unsworn statement, Appellant provided additional detail on this point:

> My reasoning for leaving was [my] fiancée at the time had taken all my belongings from back home and took off and moved to Montana without notifying me or anything. And I felt that it was in my best means to go and retrieve all of my belongings and to try and secure them back at my home of record.

[2] During the plea inquiry, the military judge established through Appellant that, although Appellant did not arrive back at Fort Polk until April 6, 2004, he turned himself in to civilian authorities on March 31, 2004.

3

> on that.  I finally just decided to take the means in my own hands and call up to Fort McCoy and see what I needed to do about turning myself in and how my situation was.

The military judge did not reopen the plea inquiry to question Appellant about any prior attempts to return to military control and the court-martial continued to adjournment.

On review, the lower court rejected Appellant's argument that his absence terminated when he presented himself to Air Force authorities in Montana.  Phillippe, No. ARMY 20040616, slip op. at 4.  The lower court found that the military judge should have explained the law of voluntary termination to Appellant and obtained admissions of fact from him to "unambiguously negate" the applicability of the defense but that the failure to do so did not create a substantial basis in law and fact to reject Appellant's plea.  Id. at 3-4.  The lower court characterized the facts in the following fashion:

> In connection with appellant's actions in Montana, we note that appellant did not assert that he personally presented himself to a military authority with power to apprehend him, as required by our precedent in Rogers and Coglin.  We also note that appellant did not assert that he personally presented himself to his "hometown recruiter," but only that he "tried to meet up" with him.  In neither circumstance did appellant ever submit to actual or constructive military control.  As such, appellant's assertions evince nothing "more than an inchoate desire to return at an earlier date."  United States v. Acemoglu, 21 U.S.C.M.A. 561, 563, 45 C.M.R. 335, 337 (1972). . . . [W]e conclude that appellant's unsworn statement raises no more than the "mere possibility" that he

4

> terminated his unauthorized absence on one or more
> occasions.  <u>Faircloth</u>, 45 M.J. at 174.

<u>Id.</u> at 4.

On appeal to this Court, Appellant argues that his unsworn statement raised matter inconsistent with his plea.  According to Appellant, the inconsistency was a defense to the extended period of unauthorized absence, and he analogizes the facts of his case to those of <u>United States v. Reeder</u>, 22 C.M.A. 11, 46 C.M.R. 11 (C.M.A. 1972).

In response, the Government agrees with Appellant that the military judge erred by failing to resolve the apparent inconsistencies between Appellant's plea and his unsworn statement.  However, the Government's position is that the error was harmless because any inconsistencies do not create a "substantial basis in law or fact" to question the sufficiency of Appellant's plea.  Finally, the Government argues that, even if this Court were to disagree, we should amend the findings of guilt to reflect multiple unauthorized absences, rather than just one, with no effect on the maximum authorized punishment or the sentence.

## DISCUSSION

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion."  <u>United States v. Eberle</u>, 44 M.J. 374, 375 (C.A.A.F. 1996) (citing <u>United States v.</u>

Gallegos, 41 M.J. 446 (C.A.A.F. 1995)). "Pleas of guilty should not be set aside on appeal unless there is 'a substantial basis in law and fact for questioning the guilty plea.'" Id. (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).

"If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." United States v. Garcia, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2000)); see Rule for Courts-Martial (R.C.M.) 910(h)(2). Once a military judge has accepted a plea as provident and has entered findings based on it, this Court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements or other evidence on the record. Garcia, 44 M.J. at 498. "A 'mere possibility' of such a conflict is not a sufficient basis to overturn the trial results." Id. (quoting Prater, 32 M.J. at 436).

The elements of unauthorized absence under Article 86, UCMJ, are:

> (a) That the accused absented himself or herself from his or her unit, organization, or place of duty at which he or she was required to be;

> (b) That the absence was without authority from anyone competent to give him or her leave; and

6

(c) That the absence was for a certain period of time.

Manual for Courts-Martial, United States pt. IV, para. 10.b.(3) (2005 ed.) (MCM).  Unauthorized absence can be terminated in five ways, including surrender to military authority.  MCM pt. IV, para. 10.c.(10).  According to the MCM, "surrender occurs when a person presents himself or herself to any military authority, whether or not a member of the same armed force, notifies that authority of his or her unauthorized absence status, and submits or demonstrates a willingness to submit to military control."  MCM pt. IV, para. 10.c.(10)(a).

The issue in this case is whether the military judge should have inquired further into the providence of Appellant's plea, in light of his unsworn statement.  Even if an accused does not volunteer all the facts necessary to establish a defense, if he sets up matter raising a possible defense, then the military judge is obligated to make further inquiry to resolve any apparent ambiguity or inconsistency.  See Prater, 32 M.J. 436.  Only after the military judge has made this inquiry can he then determine whether the apparent inconsistency or ambiguity has been resolved.[3]  However, to answer this question, there must be

---

[3] The Government, relying on the lower court's treatment of the case, argued that Appellant's unsworn statement did not state the necessary facts to find surrender by voluntary termination. However, before this determination can be made as to such a defense, there must be adequate facts on the record.  See

sufficient information on the record from which to arrive at this conclusion. Several cases decided by this Court illustrate these points.

In Reeder,[4] this Court invalidated a guilty plea to unauthorized absence for a period of over two years where the lower court found that the accused had surrendered himself to military control six days after initially absenting himself. 22 C.M.A. at 12-13, 46 C.M.R. at 12-13. While agreeing with the lower court that there was sufficient information on the record to find that the accused submitted himself to military control after six days, this Court stated that, at the very least, the accused's statements during the plea inquiry "obligated the military judge to make further inquiry to determine the full extent of the inconsistency, and, absent the accused's withdrawal of his avowals, to reject the plea." Id. at 13, 46 C.M.R. at 13.

In United States v. Pinero, we reversed where an

---

Prater, 32 M.J. at 436. Here, there were not because the military judge failed to make further inquiry of Appellant to resolve the apparent inconsistencies created by his unsworn statement.

[4] The rationale in Reeder pertaining to a separate issue of finding multiple shorter periods of unauthorized absences within the longer one alleged was abrogated in United States v. Francis, 15 M.J. 424, 429 (C.M.A. 1983). The additional

appellant's statements during the providence inquiry established that he in fact returned to military control for five hours amid an otherwise continuous period of unauthorized absence. 60 M.J. 31, 34 (C.A.A.F. 2004). "Termination was not merely a 'possible' defense here -- the judge secured a factual basis establishing that Appellant was, for a five-hour period, not guilty of unauthorized absence." Id. Therefore, in Pinero, the problem was not that the military judge did not inquire further, but rather that he reached the wrong conclusion.

We long ago recognized the congressional rationale buttressing Article 45, UCMJ. "The statute 'manifest[s] a congressional intent that guilt be acknowledged consistently from the pleas through the sentence.'" Reeder, 22 C.M.A. at 13, 46 C.M.R. at 13 (citing United States v. Thompson, 21 C.M.A. 526, 528, 45 C.M.R. 300, 302 (1972)). As we stated in Pinero, Article 45, UCMJ, like United States v. Care, 18 C.M.A. 535, 539, 40 C.M.R. 247, 251 (1969), is addressed to the military context:

> The military justice system takes particular care to test the validity of guilty pleas because the facts and the law are not tested in the crucible of the adversarial process. Further, there may be subtle pressures inherent to the military environment that may influence the manner in which servicemembers exercise (and waive) their rights. The providence inquiry and a judge's explanation of possible defenses

---

rationale in Reeder pertinent to the issue in this case, however, retains its vitality.

> are established procedures to ensure servicemembers
> knowingly and voluntarily admit to all elements of a
> formal charge.

60 M.J. at 33.  As a result, when, either during the plea

inquiry or thereafter, and in the absence of prior disavowals,

see, e.g., Garcia, 44 M.J. at 499, circumstances raise a

possible defense, a military judge has a duty to inquire further

to resolve the apparent inconsistency.

Turning to the case at hand, Appellant's statement raised

the possibility that either he surrendered to military

authorities and returned to military control, as in Pinero, or

that he tried to, as in Reeder.  This would have ended

Appellant's initial period of unauthorized absence on or about

September 11, 2001, rather than two-and-a-half years later on

March 31, 2004.  For sure, as the Government argues, the facts

are not sufficiently developed in the record to determine

whether such a defense was available.  Upon further inquiry, the

military judge may have found that Appellant did not voluntarily

terminate his unauthorized absence at the Air Force base.[5]  But

Appellant's statement lays out the elements of a possible

defense to a multi-year unauthorized absence.  Surrender occurs

---

[5] Because Appellant's statements about his interaction with Air
Force personnel in Montana are sufficient to raise a substantial
question in law and fact as to the sufficiency of the plea, we
do not reach the issue of what effect Appellant's statements
about his interactions with the hometown recruiter in Illinois
might have had on the sufficiency of the plea.

when a person presents himself to any military authority (whether or not a member of the same service), notifies that authority of his unauthorized absence, and demonstrates a willingness to submit to military control.  MCM pt. IV, para. 10.c.(10)(a).  Here, Appellant stated that he tried to turn himself in at an Air Force base, "but they just told me there was nothing they could do for me because there was no warrant out for my arrest."  This language suggests that:  (1) Appellant was physically present at the military installation; (2) Appellant advised someone he deemed authoritative that he was absent without leave ("they" checked for a warrant); and (3) Appellant expressed a willingness to return to military control. In such circumstances, and in the absence of further inquiry by the military judge, we cannot be confident that Appellant did not terminate his unauthorized absence prior to March 31, 2004. As a result, there remains a substantial basis in law and fact to question Appellant's plea to an unauthorized absence terminating on March 31, 2004.

## The Termination Date

Unauthorized absence under Article 86, UCMJ, is not a continuing offense.  Francis, 15 M.J. at 427.  "[T]he length of an unauthorized absence is the essential element in determining the legal punishment for the offense."  Id.  "[T]he [MCM] authorizes increased punishments based upon, among other things,

11

the duration of the absence." United States v. Hardeman, 59

M.J. 389, 391-92 (C.A.A.F. 2004); see MCM pt. IV, para. 10.e.

"A military judge may find multiple absences within a

single charged period so long as the maximum authorized

punishment does not exceed that for the longer period." Pinero,

60 M.J. at 34 (citing Francis, 15 M.J. at 429); see MCM pt. IV,

para. 10.c.(11) ("Findings of more than one absence under one

specification. An accused may properly be found guilty of two

or more separate unauthorized absences under one specification,

provided that each absence is included within the period alleged

in the specification and provided that the accused was not

misled."). However, the ability to do so is premised on the

ability of this Court to determine from the record an inception

date for each separate period of unauthorized absence. An

inception date is necessary to establish the offense. See

Hardeman, 59 M.J. at 391 (citing United States v. Harris, 21

C.M.A. 590, 593, 45 C.M.R. 364, 367 (1972)). Here, while there

are sufficient facts to determine that Appellant was absent from

July 24, 2001, until at least September 11, 2001,[6] there are

---

[6] By his own admission, Appellant was absent without
authorization from July 24, 2001, to at least September 11,
2001. During the plea inquiry, the military judge and Appellant
had the following exchange:

> MJ: Okay, now when was that that [sic] you left your
> unit?

insufficient facts to determine when Appellant initiated a subsequent period of unauthorized absence.  Therefore, we affirm only one period of unauthorized absence, from July 24, 2001, until on or about September 11, 2001.

### DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed only as to a finding of guilt to an unauthorized absence ending on or about September 11, 2001.  The decision is set aside with respect to the sentence.  The record of trial is returned to the Judge Advocate General of the Army for remand to the United States Army Court of Criminal Appeals

---

ACC: Around the 24th of July, I am not sure of the date, sir, exactly.

MJ:  But it was on or about the 24th of July of 2001, though?

ACC: Yes, sir.

. . . .

MJ:  Okay.  At any time between the 24th of July of 2001 and the 31st of March of 2004 did you have authority to be absent from your unit?

ACC: No, I did not, sir.

MJ:  Did you think that you had authority to be gone?

ACC: No, I did not, sir.

As noted, during his unsworn statement, Appellant indicated that he tried to turn himself in to military authorities on or about September 11, 2001, at an Air Force base in Montana.

for reassessment under Sales, 22 M.J. at 307-08, or a rehearing may be ordered if appropriate.