UNITED STATES, Appellee

v.

Carrie N. RIDDLE, Private
U.S. Army, Appellant

No. 08-0739

Crim. App. No. 20070756

United States Court of Appeals for the Armed Forces

Argued February 10, 2009

Decided May 12, 2009

STUCKY, J., delivered the opinion of the Court, in which BAKER
and RYAN, JJ., joined.  EFFRON, C.J., filed a separate
dissenting opinion, in which ERDMANN, J., joined.


Counsel


For Appellant:  William M. Fischbach III, Esq. (argued);
Lieutenant Colonel Matthew M. Miller, Lieutenant Colonel Mark
Tellitocci, and Captain Pamela Perillo (on brief); Major Grace
M. Gallagher.


For Appellee:  Captain James M. Hudson (argued); Colonel Denise
R. Lind, Lieutenant Colonel Mark H. Sydenham, and Major
Christopher B. Burgess (on brief).

Military Judge:  Richard Gordon

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

Appellant asserts that her guilty pleas were improvident because the military judge did not explain or discuss the defense of lack of mental responsibility during the plea inquiry. We hold that Appellant's pleas were provident and that under the facts of this case the military judge was not obligated to explicitly explain or discuss that defense with Appellant.

## I. Background

Appellant, Private (PVT) Carrie N. Riddle, pled guilty before a general court-martial to four specifications of use of marijuana and one specification of being absent without leave (AWOL). Articles 112a and 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 886 (2000). The military judge, sitting alone, sentenced Appellant to a bad-conduct discharge and ten days of confinement. As Appellant had ten days of pretrial confinement credit, she served no confinement following her court-martial. The United States Army Court of Criminal Appeals summarily affirmed the findings and sentence on May 28, 2008. United States v. Riddle, No. ARMY 20070756 (A. Ct. Crim. App. May 28, 2008).

Appellant entered active duty on May 31, 2006, and at the time of these offenses was assigned to Fort Benning, Georgia. According to the stipulation of fact admitted at trial,

2

Appellant used marijuana on several occasions throughout her period of active duty. On March 1, 2007, Appellant left her unit for over a month and traveled to South Carolina with another soldier, PVT Renee Kunsman, remaining there until her April 16, 2007, voluntary return to her unit. During this trip Appellant used marijuana with PVT Kunsman. Appellant advised the pregnant PVT Kunsman that marijuana could be good for her nerves and appetite. In a stipulation of fact, the parties agreed that Appellant had chronic alcohol and marijuana dependence as well as bipolar and borderline personality disorder, conditions which pre-dated her enlistment.

The military judge was aware of Appellant's mental condition. He knew that before her unauthorized absence she was scheduled to be administratively discharged for her mental condition, and that she was then receiving treatment at an "off-post installation that specializes in mental issues, mental and behavioral issues." The military judge was also aware that Appellant arrived at trial directly from the mental health facility and would return there at the conclusion of trial. In addition, the military judge's questions indicate that Appellant's mental state was of concern to him, inquiring "Are you feeling okay?" when Appellant nonchalantly referred to throwing the butt of a marijuana cigarette into a lake as "getting the fishes high."

At trial, the military judge asked Appellant a series of questions regarding her mental health and her competency to stand trial:

    MJ:  Now, I understand you are currently receiving
    treatment at the Bradley Center in Columbus, Georgia.
    Is that true?

    ACC:  Yes, sir.

    MJ:  How long have you been down at the Bradley
    Center?

    ACC:  Since the 12th of June, this time, sir.

    MJ:  Okay.  And what are you being treated for?

    ACC:  Bipolar and borderline personality disorder with
    severe depression, sir.

    MJ:  Okay.  I understand that at the conclusion of
    this trial today you are going to return to the
    Bradley Center for continued treatment?

    ACC:  Yes, sir.

    MJ:  All right. . . .  The question is whether or not
    you are -- you believe that you are competent to stand
    trial.

        Do you think you are?

    ACC:  Yes, sir.

    MJ:  Do you believe that you fully understand not only
    the ramifications of this court-martial but what is
    going to happen today?

    ACC:  Yes, sir.

    MJ:  Okay.  Are you currently taking any drugs or
    medications?

    ACC:  Yes, sir.

MJ:  What drugs or medications are you taking?

ACC:  My medications are, Zoloft, 100 milligrams, with Topamax three times a day; Ibuprofen, 800 milligrams three times a day; Zyrtec; Atarox [sic], Sereoquel; and --

MJ:  Are most of those anti-depressants?

ACC:  Sleep aids, mood suppressants, and a couple of anti-depressants.

MJ:  Okay.  But Major Grills [defense counsel] assures me that, in her opinion, she believes you are competent to understand the nature of these proceedings.  Do you agree with that?

ACC:  Yes, sir.

The military judge also questioned Appellant as to her

mental capacity and responsibility at the time of the offenses:

MJ:  Okay.  Did you understand what you were doing when you went AWOL?

ACC:  Yes, Sir.

MJ:  Okay.  Now I realize that you have had some psychiatric issues, I guess apparently in AIT and that continued apparently to now, although, I have to say for the record, you appear to be extremely articulate and very alert today.  But my question to you is, as a Soldier, did you understand that when you went AWOL . . . that what you were doing was wrong, that you were not authorized to do that?

ACC:  Yes, Sir.

    . . . .

MJ:  And you knew that smoking marijuana during all of these four specifications was wrongful, correct?

ACC:  Yes, sir.

        . . . .

5

MJ: And do you agree and do you admit that during this period of time from early December through April 2007, that your use of marijuana was wrongful?

ACC: Yes, Sir.

Trial defense counsel expanded upon this line of questioning during Appellant's unsworn sentencing statement in an apparent effort to display Appellant's understanding and remorse for her crimes:

DC: And we have already talked about the different conditions that you suffer from, but -- and the military judge has already asked you this, but the offenses that you plead guilty to, you understand what you were doing at those times?

ACC: Yes, ma'am.

DC: And you understood right from wrong?

ACC: Yes, ma'am.

During the sentencing proceeding the military judge accepted into evidence a mental health evaluation of Appellant detailing her condition. The "Report of Mental Status Evaluation" was created on May 14, 2007, and updated on May 17, 2007, by Major Long P. Huynh, the Chief of Inpatient Psychiatry at Martin Army Community Hospital. The report stated that Appellant "has the mental capacity to understand and participate in the proceedings" and that she "was mentally responsible." Major Huynh notes Appellant's two suicide attempts and states that Appellant would remain an inpatient for the next week. He further states that Appellant is "medically and psychologically

stable enough for 1-2 weeks of confinement"; periods longer than that "may cause her clinical conditions to deteriorate and possibly lead to readmission to psychiatry." It is unclear why the report was created; however Major Huynh states in the comments section that Appellant was "unsuited for further military service. Her company commander has agreed to pursue to [sic] the most rapid separation possible." Although this form references "proceedings" for which Appellant was determined to be "mentally responsible," the form was completed nine days prior to the preferral of charges.

After handing down the sentence knowing that Appellant was going to be returned directly to the Bradley Center, the military judge made one final statement regarding Appellant's mental state:

> I just want to say one more time for the record, my personal observations in this courtroom today are that, although Private Riddle indicated she was taking a number of drugs at the Bradley Center . . . she appeared to the court to be fully cognizant of everything that happened today. She was alert. She was articulate, and she appeared to the court to completely understand the nature and quality of these proceedings.

## II. Discussion

Appellant now argues that the military judge abused his discretion when he accepted her guilty pleas. Appellant asserts that, given her mental health history, the military judge was required to explain or discuss the defense of lack of mental

7

responsibility, and furthermore the military judge was required to ensure that trial defense counsel had evaluated the viability of the defense and/or elicit facts from her that would negate the defense. Appellant contends that, as none of these things occurred, her pleas were improvident.

"[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008); United States v. Shaw, 64 M.J. 460, 462 (C.A.A.F. 2007). If, during the proceedings, the accused sets up matter inconsistent with the plea, it is the responsibility of the military judge to either resolve the inconsistency or reject the plea. Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2000); Shaw, 64 M.J. at 462. Once the military judge has accepted the pleas and entered findings based upon them, this Court will not set them aside unless we find a substantial conflict between the pleas and the accused's statements or other evidence of record. Shaw, 64 M.J. at 462. More than a "mere possibility" of conflict is required. Id. (citations and quotation marks omitted). Instead, this Court must find "something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." Inabinette, 66 M.J. at 322.

United States v. Riddle, No. 08-0739/AR

In military law, lack of mental responsibility is an affirmative defense that an accused must establish by clear and convincing evidence. Article 50a(a), UCMJ, 10 U.S.C. § 850a(a) (2000); Rules for Courts-Martial (R.C.M.) 916(b)(2). If "there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial" the military judge and other officers of the court each has the independent responsibility to inquire into the accused's mental condition. R.C.M. 706(a). An accused cannot "make an informed plea without knowledge that he suffered a severe mental disease or defect at the time of the offense." United States v. Harris, 61 M.J. 391, 398 (C.A.A.F. 2005). Similarly, the military judge cannot conduct the necessary providence inquiry into the accused's pleas "without exploring the impact of any potential mental health issues on those pleas." Id.

We have addressed the question of an accused's mental disease or defect and the providence of a guilty plea in the recent cases of Inabinette, United States v. Glenn, 66 M.J. 64 (C.A.A.F. 2008), Shaw, and Harris. A military judge can presume, in the absence of contrary circumstances, that the accused is sane and, furthermore, that counsel is competent. Shaw, 64 M.J. at 463. Should the accused's statements or material in the record indicate a history of mental disease or

9

defect on the part of the accused, the military judge must determine whether that information raises either a conflict with the plea and thus the possibility of a defense or only the "mere possibility" of conflict. Id. at 462 (citation and quotation marks omitted). The former requires further inquiry on the part of the military judge, the latter does not. Id. This is a contextual determination by the military judge. Id. at 464. However, we have additionally indicated that it is prudent, but we emphasize not always required, to conduct further inquiry when a significant mental health issue is raised, regardless of whether a conflict has actually arisen. Id.

The question in Shaw was whether sufficient evidence of a mental disease or disorder was before the military judge so as to raise an inconsistency with Shaw's plea and thus require the military judge to inquire further into Shaw's mental state and advise him of the defense of lack of mental responsibility. Shaw provided an unsworn statement during sentencing stating that he had previously been diagnosed with bipolar disorder following a head injury. Id. at 461. Aside from responding to defense counsel's questions on the issue, Shaw provided no further evidence that his condition affected his mental responsibility for his actions. Id. We determined that Shaw's reference to his history of bipolar disorder "at most raised only the 'mere possibility' of a conflict with the plea," and

10

that therefore it was not an abuse of discretion for the military judge to accept Shaw's plea without conducting further inquiry into his mental health. Id. at 464. In reaching that decision we considered Shaw's history of bipolar disorder, his conduct during the plea inquiry and whether that reflected on his capacity to plead guilty, and if Shaw's statements indicated an inability to appreciate the nature and wrongfulness of his acts as a result of his mental health issues. Id. at 462-63; see also Glenn, 66 M.J. at 66.

In Harris, which sits at the other end of the spectrum from Shaw, we found that there was sufficient basis in law and fact to question Harris's guilty plea. 61 M.J. at 398. Harris had been convicted for passing bad checks, unauthorized absence, and larceny. Id. at 392. At trial, the military judge found that Harris understood the nature and quality and/or wrongfulness of his actions. Id. at 393. However, this Court found that, as Harris's mental disease or defect was diagnosed only after the trial, his plea was not informed and the trial court could not have performed the necessary providence inquiry. Id. at 398-99.

While there is more here than a mere unsworn assertion, the facts of this case are still closer to Shaw than to Harris. The record of trial makes clear that neither Appellant's conduct nor her mental health history created more than the mere possibility of conflict with her pleas. Admittedly, this case differs from

11

Shaw in that the record reflects a diagnosis of bipolar disorder for which Appellant was being treated at the time of trial. In addition, Appellant arrived at the court-martial from the mental health facility and would return there at its conclusion. However, the record does not reflect that her bipolar disorder affected the providence of her plea. See Shaw, 64 M.J. at 462.

In the instant case, the military judge was aware of Appellant's mental health history and made sure, as set out above, that Appellant's mental condition, current treatment, and competency to stand trial did not put the providence of her plea at issue. He specifically asked her about her mental responsibility at the time the offenses were committed, ensuring that at the time of her offenses she understood both what she was doing and the difference between right and wrong. In addition, during Appellant's unsworn statement trial defense counsel repeated the inquiry into Appellant's mental responsibility for her acts. The military judge placed his impressions of Appellant's behavior at trial on the record and repeated those observations as to Appellant's mental acuity following sentencing. He found that she was "fully cognizant of everything that happened today," as well as "alert," "articulate," and that she appeared to "completely understand the nature and quality of these proceedings." Finally, the "Report of Mental Status Evaluation" found Appellant "mentally

responsible." Unlike Harris, or United States v. Martin, 56 M.J. 97 (C.A.A.F. 2001), this is not a case in which there were conflicting evaluations of Appellant's mental responsibility. There was no evidence of record that Appellant lacked mental responsibility at the time the offenses were committed.

Given these facts, we cannot say that the military judge was required to explain or discuss the defense of lack of mental responsibility with Appellant. Appellant appeared competent and responsible before the military judge, she claimed she was competent and responsible at the time of the offenses, her counsel agreed that she was competent and responsible at that time, and the mental status evaluation stated that she "was responsible." Moreover, no evidence exists to suggest that Appellant did not understand the nature and quality or the wrongfulness of her actions when committing the offenses. The evidence before the military judge presented only the mere possibility of conflict with Appellant's guilty plea and did not raise a substantial basis in law or fact for questioning the providence of that plea.

## III. Conclusion

For the reasons set forth above, the decision of United States Army Court of Criminal Appeals is affirmed.

United States v. Riddle, No. 08-0739/AR

EFFRON, Chief Judge, with whom ERDMANN, Judge, joins (dissenting):

The plea colloquy in this case between Appellant and the military judge raised a possible defense of lack of mental responsibility under Rule for Courts-Martial (R.C.M.) 916(k). These circumstances required the military judge to engage in a further inquiry to resolve the apparent inconsistency raised by the plea colloquy. See United States v. Phillippe, 63 M.J. 307, 309 (C.A.A.F. 2006). The military judge did not do so. Accordingly, I respectfully dissent from the conclusion of the majority opinion that the military judge did not err in the conduct of the plea inquiry.

## I. RESPONSIBILIITIES OF THE MILITARY JUDGE DURING THE PLEA COLLOQUY

When a military accused offers to plead guilty, the military judge must engage in a detailed colloquy to ensure protection of the rights of the accused under applicable law. See United States v. Care, 18 C.M.A. 535, 541-42, 40 C.M.R. 247, 253-54 (1969). The military judge must personally address the accused, explain the elements of each charged offense, and ask questions about the accused's actions and intentions to ensure that the accused's conduct meets all elements of the charges to which the accused is pleading guilty. Id. at 541, 40 C.M.R. at 253. The military judge must personally advise the accused of

the rights forfeited by pleading guilty and make appropriate inquiries to ensure that the accused's waiver of these rights is voluntary. Id. The military judge must make findings on the record that there is "a knowing, intelligent, and conscious waiver" of rights before a guilty plea may be accepted. Id. at 542, 40 C.M.R. at 254.

A guilty plea may not be accepted unless the military judge is fully satisfied as to the providence of the plea. "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." United States v. Garcia, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting Article 45(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 845 (2000)). A potential defense to the charged crime constitutes "matter inconsistent with the plea" under Article 45(a), UCMJ. If, at any time during the proceeding, "circumstances raise a possible defense," the military judge must consider whether the defense applies before accepting the plea as provident. Phillippe, 63 M.J. at 310-11. Although the "mere possibility" of a defense is not enough to create an inconsistency with the plea, United States v. Shaw, 64 M.J. 460, 462 (C.A.A.F. 2007) (quoting Garcia, 44 M.J. at 498) (quotation marks omitted), the circumstances need not constitute a complete defense in order to

trigger the military judge's duty to make a further inquiry into a possible defense.  Phillippe, 63 M.J. at 310.

If evidence raises a possible defense, the military judge must explore that defense by inquiring further into the evidence that supports it before accepting the plea as provident.  Id. at 310-11.  When these inquiries establish that the defense does not apply, the military judge may accept the plea without explaining the defense.  See id.; United States v. Inabinette, 66 M.J. 320, 322-23 (C.A.A.F. 2008).  If, however, the military judge's inquiries do not bring forth evidence demonstrating that the defense is inapplicable, the military judge must explain the defense to the accused.  See United States v. Harris, 61 M.J. 391, 398 n.13 (C.A.A.F. 2005).  The requirement for an explanation ensures that the accused's waiver of the right to present the defense is knowing and voluntary.  See Phillippe, 63 M.J. at 310.  When the military judge fails to address the issue of a possible defense through further inquiry or explanation of the defense to the accused, an appellate court will reverse for an abuse of discretion.  See Phillippe, 63 M.J. at 309-10.

II.  THE PLEA COLLOQUY AND MENTAL RESPONSIBILITY

Under R.C.M. 916(k), "[i]t is an affirmative defense to any offense that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe

mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts." A military judge's duty to inquire into an accused's mental condition before accepting the accused's guilty plea depends on whether the "circumstances raise a possible defense" of lack of mental responsibility. See Phillippe, 63 M.J. at 310-11.

In a line of cases involving bipolar disorder, we have distinguished between cases that suggested a possible defense of lack of mental responsibility and cases that raised the "mere possibility" of a defense. Compare Harris, 61 M.J. at 398, with Shaw, 64 M.J. at 464; United States v. Glenn, 66 M.J. 64, 66 (C.A.A.F. 2008). An accused's unsupported claim of bipolar disorder does not raise a possible defense. See Shaw, 64 M.J. at 462-64; Glenn, 66 M.J. at 65-66. In Glenn and Shaw, each accused's claim of bipolar disorder was unsupported by any "factual record developed during or after the trial substantiating Appellant's statement or indicating whether and how bipolar disorder may have influenced his plea," the accused's conduct during the inquiry did not raise concerns of lack of capacity, and there was no assertion or other evidence suggesting that the accused was "unable to appreciate the nature and quality or wrongfulness of his acts as a result of a mental disease or defect." Shaw, 64 M.J. at 462-63; Glenn, 66 M.J. at 66. In each of these cases, the claims were insufficient to

4

create an inconsistency with the plea that required further inquiry from the military judge.  See Shaw, 64 M.J. at 462-64; Glenn, 66 M.J. at 65-66.

By contrast, we have found that a possible defense was raised, and an inconsistency with the plea created, in cases where there was record evidence of a medical diagnosis of bipolar disorder.  In Harris, a psychiatrist diagnosed the accused while he was in confinement with bipolar disorder and found that he was unable to appreciate the nature of his actions at the time of the offenses.  61 M.J. at 393.  Although two sanity boards had found the accused mentally responsible, we found that the contrary diagnosis in confinement raised a possible defense, and we granted a new trial.  Id. at 398-99. In Inabinette, a testifying psychiatrist's statement that the accused had bipolar disorder with psychotic features created an inconsistency with the accused's plea.  66 M.J. at 323.  We held in these cases that the military judge was required to either elicit information to disprove the defense of lack of mental responsibility, see id. at 322-23, or to explain the defense to the accused, see Harris, 61 M.J. at 398 n.13, before accepting the guilty plea as provident.

III.  THE PLEA INQUIRY AT APPELLANT'S COURT-MARTIAL

A.  THE INFORMATION RAISING THE REQUIREMENT FOR AN INQUIRY

For the reasons set forth below, the plea inquiry at Appellant's trial developed information that presented more than a "mere possibility" of a defense, see Shaw, 64 M.J. at 464, raising "a possible defense" of lack of mental responsibility requiring further inquiry by the military judge.  See Phillippe, 63 M.J. at 310.

First, the parties stipulated that Appellant was medically diagnosed with bipolar disorder and borderline personality disorder that pre-existed her military service, and thus also pre-existed her offenses.

Second, Appellant was confined in a private inpatient mental health treatment facility, the Bradley Center, from June 12, 2007, until the time of her court-martial on July 2, 2007, and was returned for further treatment at the conclusion of her court-martial.  The record indicates that after Appellant terminated her unauthorized absence on April 16, 2007, by surrendering to the psychiatric ward of Martin Army Community Hospital, Appellant spent most of the time leading up to the court-martial as an inpatient at either the Martin Army Community Hospital or the Bradley Center, with the exception of ten days of pretrial confinement.  The fact that Appellant's mental condition was serious enough to warrant continued

hospitalization underscored the possibility that her bipolar disorder was a "severe mental disease or defect" that could have influenced her ability to "appreciate the nature and quality or the wrongfulness of . . . her acts."  See R.C.M. 916(k).

Third, Appellant testified to the military judge that she was taking at least six types of medication, including mood suppressants and anti-depressants, at the time of her trial. Appellant's extensive medication also suggested the potential severity of her mental condition.

Fourth, the mental health report submitted in sentencing noted that Appellant had attempted suicide twice.  While the mental health report also noted that her mood "ha[d] been stabilized" through treatment and that her thought process appeared normal at the time of the report, Appellant had not been treated at the time of her offenses.  Further, the report stated that, although Appellant was stable enough for one to two weeks of confinement, longer confinement could result in mental deterioration.  These segments of the report suggest that when she was not receiving treatment -- at the time of the offenses -- Appellant's mental conditions were worse, and that Appellant needed continued mental treatment.

Finally, the military judge, in light of comments by defense counsel, appeared to tailor the sentence with a view towards mental health treatment as the appropriate remedy for

Appellant.  At sentencing, after questioning Appellant about her treatment, defense counsel asked the military judge to "[t]ake into consideration . . . the strides she is willing to take now to go forward with proper counseling, with proper medication" and that "[t]he plan is for her to go back to the Bradley Center until they are satisfied that she be released and she should be discharged from the Army."  The military judge sentenced Appellant to time served, with accompanying commentary that Appellant would be returned to the mental health facility for further treatment.

In combination, the foregoing circumstances should have alerted the military judge that, at the time of her offenses, Appellant may have suffered from "a severe mental disease or defect" that left her "unable to appreciate the nature and quality or wrongfulness of . . . her acts."  R.C.M. 916(k).  The military judge was required to inquire into this evidence, and to either determine that a defense of lack of mental responsibility would not apply or explain the defense to Appellant, to ensure that her pleas were provident.  See supra Part I; Phillippe, 63 M.J. at 310.

B.  THE INQUIRY CONDUCTED BY THE MILITARY JUDGE

During the providence inquiry, the military judge addressed Appellant's mental state on the day of the court-martial.  The military judge asked Appellant whether she was competent to

stand trial, whether she understood what was happening, and whether she was feeling okay. The military judge commented that defense counsel had assured the military judge that she believed that Appellant was competent to stand trial and to understand the proceedings -- statements with which Appellant agreed. The military judge also remarked on the record that Appellant appeared "extremely articulate and very alert" and that "she appeared to the court to be fully cognizant of everything that happened today."

The military judge asked a few questions about Appellant's mental disorders. He asked Appellant how long she had been in treatment at the Bradley Center, and he affirmed that she would be returning to the Bradley Center after the court-martial. He asked Appellant why she was receiving treatment and what drugs she was taking.

In the most relevant inquiries, the military judge asked Appellant about her understanding of her offenses at the time they were committed. The military judge asked, "Did you understand what you were doing when you went AWOL?" and "did you understand when you went AWOL . . . that what you were doing was wrong, that you were not authorized to do it?" The military judge also asked whether Appellant "knew that smoking marijuana during all of these four specifications was wrongful." Defense counsel asked at sentencing whether, despite Appellant's mental

conditions, she "understood what [she] was doing at those times?" and "understood right from wrong?" Appellant replied "Yes" to all of these questions.

Based on this record, the military judge's questions about Appellant's mental condition did not elicit facts that disproved the possible defense of lack of mental responsibility raised by the evidence. See Inabinette, 66 M.J. at 322-23. Appellant's answers to the military judge's few questions about why she was being treated and what drugs she was taking supported, rather than contradicted, the defense. Further, the military judge did not inquire into the most detailed mental health information he possessed -- the mental health report submitted at sentencing. The report was prepared while Appellant was in treatment, and it is unclear to what extent the report was intended to address her mental state at the time of the offenses. The military judge could have determined through questioning whether the report was a psychiatric evaluation of Appellant's mental responsibility at the time of her offenses, and the issue of timing might have disproved the defense, but the military judge did not ask any questions about the report.

The military judge's questions about Appellant's competence to stand trial and the military judge's personal observations of Appellant's conduct at the court-martial did not negate the defense. Appellant's mental state and conduct at the court-

10

martial, while she was in treatment and on numerous medications, did not demonstrate that Appellant was mentally responsible at the time of her offenses, which occurred before she received mental health treatment.

Although the military judge touched upon the issue of mental responsibility when inquiring about whether Appellant understood her actions, the colloquy did not resolve the applicability of the mental responsibility defense. If Appellant had a severe mental disease or defect, her self-assessment of her understanding might have been flawed. In any case, Appellant's personal answers did not represent a knowing waiver of the defense in the absence of information provided by the military judge about the defense. See Phillippe, 63 M.J. at 310-11.

The interchange between the military judge and defense counsel did not lessen the military judge's duty to explain the defense to Appellant. Nothing in the record demonstrates that defense counsel considered the defense of lack of mental responsibility; and in any case, defense counsel's obligation to consider possible defenses did not satisfy the military judge's duty to conduct a proper providence inquiry directly with the accused. See Care, 18 C.M.A. at 541, 40 C.M.R. at 253. The providence inquiry centers on the special relationship between the accused and the military judge, not between the accused and

counsel.  See id.  This relationship requires the military judge to ensure that an accused's pleas are provident before they may be accepted.  See Phillippe, 63 M.J. at 309.

Under these circumstances, the military judge abused his discretion by not completing the required plea inquiry in light of the possible defense raised during the plea colloquy. Accordingly, I would reverse the decision of the Court of Criminal Appeals.