EFFRON, Chief Judge,
with whom ERDMANN, Judge,
joins (dissenting):
The plea colloquy in this case between Appellant and the military judge raised a possible defense of lack of mental responsibility under Rule for Courts-Martial (R.C.M.) 916(k). These circumstances required the military judge to engage in a further inquiry to resolve the apparent inconsistency raised by the plea colloquy. See United States v. Phillippe, 63 M.J. 307, 309 (C.A.A.F.2006). The military judge did not do so. Accordingly, I respectfully dissent from the conclusion of the majority opinion that the military judge did not err in the conduct of the plea inquiry.
I. RESPONSIBILITIES OF THE MILITARY JUDGE DURING THE PLEA COLLOQUY
When a military accused offers to plead guilty, the military judge must engage in a detailed colloquy to ensure protection of the rights of the accused under applicable law. See United States v. Care, 18 C.M.A. 535, 541-42, 40 C.M.R. 247, 253-54 (1969). The military judge must personally address the accused, explain the elements of each charged offense, and ask questions about the accused’s actions and intentions to ensure that the accused’s conduct meets all elements of the charges to which the accused is pleading guilty. Id. at 541, 40 C.M.R. at 253. The military judge must personally advise the accused of the rights forfeited by pleading guilty and make appropriate inquiries to ensure that the accused’s waiver of these rights is voluntary. Id. The military judge must make findings on the record that there is “a knowing, intelligent, and conscious waiver” of rights before a guilty plea may be accepted. Id. at 542, 40 C.M.R. at 254.
A guilty plea may not be accepted unless the military judge is fully satisfied as to the providence of the plea. “If an accused ‘sets up matter inconsistent with the plea’ at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea.” United States v. Garcia, 44 M.J. 496, 498 (C.A.A.F.1996) (quoting Article 45(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 845 (2000)). A potential defense to the charged crime constitutes “matter inconsistent with the plea” under Article 45(a), UCMJ. If, at any time during the proceeding, “circumstances raise a possible defense,” the military judge must consider whether the defense applies before accepting the plea as provident. Phillippe, 63 M.J. at 310-11. Although the “mere possibility” of a defense is not enough to create an inconsistency with the plea, United States v. Shaw, 64 M.J. 460, 462 (C.A.A.F.2007) (quoting Garcia, 44 M.J. at 498) (quotation marks omitted), the circumstances need not constitute a complete defense in order to trigger the military judge’s duty to make a further inquiry into a possible defense. Phillippe, 63 M.J. at 310.
If evidence raises a possible defense, the military judge must explore that defense by inquiring further into the evidence that supports it before accepting the plea as provident. Id. at 310-11. When these inquiries establish that the defense does not apply, the military judge may accept the plea without explaining the defense. See id.; United States v. Inabinette, 66 M.J. 320, 322-23 (C.A.A.F.2008). If, however, the military judge’s inquiries do not bring forth evidence demonstrating that the defense is inapplicable, the military judge must explain the defense to the accused. See United States v. Harris, 61 M.J. 391, 398 n. 13 (C.A.A.F.2005). The requirement for an explanation ensures that the accused’s waiver of the right to present the defense is knowing and volun *341 tary. See Phillippe, 63 M.J. at 310. When the military judge fails to address the issue of a possible defense through further inquiry or explanation of the defense to the accused, an appellate court will reverse for an abuse of discretion. See Phillippe, 63 M.J. at 309-10.
II. THE PLEA COLLOQUY AND MENTAL RESPONSIBILITY
Under R.C.M. 916(k), “[i]t is an affirmative defense to any offense that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts.” A military judge’s duty to inquire into an accused’s mental condition before accepting the accused’s guilty plea depends on whether the “circumstances raise a possible defense” of lack of mental responsibility. See Phillippe, 63 M.J. at 310-11.
In a line of cases involving bipolar disorder, we have distinguished between cases that suggested a possible defense of lack of mental responsibility and cases that raised the “mere possibility” of a defense. Compare Harris, 61 M.J. at 398, with Shaw, 64 M.J. at 464; United States v. Glenn, 66 M.J. 64, 66 (C.A.A.F.2008). An accused’s unsupported claim of bipolar disorder does not raise a possible defense. See Shaw, 64 M.J. at 462-64; Glenn, 66 M.J. at 65-66. In Glenn and Shaiv, each accused’s claim of bipolar disorder was unsupported by any “factual record developed during or after the trial substantiating Appellant’s statement or indicating whether and how bipolar disorder may have influenced his plea,” the accused’s conduct during the inquiry did not raise concerns of lack of capacity, and there was no assertion or other evidence suggesting that the accused was “unable to appreciate the nature and quality or wrongfulness of his acts as a result of a mental disease or defect.” Shaw, 64 M.J. at 462-63; Glenn, 66 M.J. at 66. In each of these cases, the claims were insufficient to create an inconsistency with the plea that required further inquiry from the military judge. See Shaw, 64 M.J. at 462-64; Glenn, 66 M.J. at 65-66.
By contrast, we have found that a possible defense was raised, and an inconsistency with the plea created, in cases where there was record evidence of a medical diagnosis of bipolar disorder. In Harris, a psychiatrist diagnosed the accused while he was in confinement with bipolar disorder and found that he was unable to appreciate the nature of his actions at the time of the offenses. 61 M.J. at 393. Although two sanity boards had found the accused mentally responsible, we found that the contrary diagnosis in confinement raised a possible defense, and we granted a new trial. Id. at 398-99. In Ina-binette, a testifying psychiatrist’s statement that the accused had bipolar disorder with psychotic features created an inconsistency with the accused’s plea. 66 M.J. at 323. We held in these cases that the military judge was required to either elicit information to disprove the defense of lack of mental responsibility, see id. at 322-23, or to explain the defense to the accused, see Harris, 61 M.J. at 398 n. 13, before accepting the guilty plea as provident.
III. THE PLEA INQUIRY AT APPELLANT’S COURT-MARTIAL
A. THE INFORMATION RAISING THE REQUIREMENT FOR AN INQUIRY
For the reasons set forth below, the plea inquiry at Appellant’s trial developed information that presented more than a “mere possibility” of a defense, see Shaw, 64 M.J. at 464, raising “a possible defense” of lack of mental responsibility requiring further inquiry by the military judge. See Phillippe, 63 M.J. at 310.
First, the parties stipulated that Appellant was medically diagnosed with bipolar disorder and borderline personality disorder that pre-existed her military service, and thus also pre-existed her offenses.
Second, Appellant was confined in a private inpatient mental health treatment facility, the Bradley Center, from June 12, 2007, until the time of her court-martial on July 2, *342 2007, and was returned for further treatment at the conclusion of her court-martial. The record indicates that after Appellant terminated her unauthorized absence on April 16, 2007, by surrendering to the psychiatric ward of Martin Army Community Hospital, Appellant spent most of the time leading up to the court-martial' as an inpatient at either the Martin Army Community Hospital or the Bradley Center, with the exception of ten days of pretrial confinement. The fact that Appellant’s mental condition was serious enough to warrant' continued hospitalization underscored the possibility that her bipolar disorder was a “severe mental disease or defect” that could have influenced her ability to “appreciate the nature and quality or the wrongfulness of ... her acts.” See R.C.M. 916(k).
Third, Appellant testified to the military judge that she was taking at least six types of medication, including mood suppressants and anti-depressants, at the time of her trial. Appellant’s extensive medication also suggested the potential severity of her mental condition.
Fourth, the mental health report submitted in sentencing noted that Appellant had attempted suicide twice. While the mental health report also noted that her mood “ha[d] been stabilized” through treatment and that her thought process appeared normal at the time of the report, Appellant had not been treated at the time of her offenses. Further, the report stated that, although Appellant was stable enough for one to two weeks of confinement, longer confinement could result in mental deterioration. These segments of the report suggest that when she was not receiving treatment — at the time of the offenses — Appellant’s mental conditions were worse, and that Appellant needed continued mental treatment.
Finally, the military judge, in light of comments by defense counsel, appeared to tailor the sentence with a view towards mental health treatment as the appropriate remedy for Appellant. At sentencing, after questioning Appellant about her treatment, defense counsel asked the military judge to “[t]ake into consideration .!.. the strides she is willing to take now to go forward with proper counseling, with proper medication” and that “[t]he plan is for her to go back to the Bradley Center until they are satisfied that she be released and she should be discharged from the Army.” The military judge sentenced Appellant to time served, with accompanying commentary that Appellant would be returned to the mental health facility for further treatment.
In combination, the foregoing circumstances should have alerted the military judge that, at the time of her offenses, Appellant may have suffered from “a severe mental disease or defect” that left her “unable to appreciate the nature and quality or wrongfulness of ... her acts.” R.C.M. 916(k). The military judge was required to inquire into this evidence, and to either determine that a defense of lack of mental responsibility would not apply or explain the defense to Appellant, to ensure that her pleas were provident. See supra Part I; Phillippe, 63 M.J. at 310.
B. THE INQUIRY CONDUCTED BY THE MILITARY JUDGE
During the providence inquiry, the military judge addressed Appellant’s mental state on the day of the court-martial. The military judge asked Appellant whether she was competent to stand trial, whether she understood what was happening, and whether she was feeling okay. The military judge commented that defense counsel had assured the military judge that she believed that Appellant was competent to stand trial and to understand the proceedings' — statements with which Appellant agreed. The military judge also remarked on the record that Appellant appeared “extremely articulate and very alert” and that “she appeared to the court to be fully cognizant of everything that happened today.”
The military judge asked a few questions about Appellant’s mental disorders. He asked Appellant how long she had been in treatment at the Bradley Center, and he affirmed that she would be returning to the Bradley Center after the court-martial. He *343 asked Appellant why she was receiving treatment and what drugs she was taking.
In the most relevant inquiries, the military judge asked Appellant about her understanding of her offenses at the time they were committed. The military judge asked, “Did you understand what you were doing when you went AWOL?” and “did you understand when you went AWOL ... that what you were doing was wrong, that you were not authorized to do it?” The military judge also asked whether Appellant “knew that smoking marijuana during all of these four specifications was wrongful.” Defense counsel asked at sentencing whether, despite Appellant’s mental conditions, she “understood what [she] was doing at those times?” and “understood right from wrong?” Appellant replied “Yes” to all of these questions.
Based on this record, the military judge’s questions about Appellant’s mental condition did not elicit facts that disproved the possible defense of lack of mental responsibility raised by the evidence. See Inabinette, 66 M.J. at 322-23. Appellant’s answers to the military judge’s few questions about why she was being treated and what drugs she was taking supported, rather than contradicted, the defense. Further, the military judge did not inquire into the most detailed mental health information he possessed — the mental health report submitted at sentencing. The report was prepared while Appellant was in treatment, and it is unclear to what extent the report was intended to address her mental state at the time of the offenses. The military judge could have determined through questioning whether the report was a psychiatric evaluation of Appellant’s mental responsibility at the time of her offenses, and the issue of timing might have disproved the defense, but the military judge did not ask any questions about the report.
The military judge’s questions about Appellant’s competence to stand trial and the military judge’s personal observations of Appellant’s conduct at the court-martial did not negate the defense. Appellant’s mental state and conduct at the court-martial, while she was in treatment and on numerous medications, did not demonstrate that Appellant was mentally responsible at the time of her offenses, which occurred before she received mental health treatment.
Although the military judge touched upon the issue of mental responsibility when inquiring about whether Appellant understood her actions, the colloquy did not resolve the applicability of the mental responsibility defense. If Appellant had a severe mental disease or defect, her self-assessment of her understanding might have been flawed. In any case, Appellant’s personal answers did not represent a knowing waiver of the defense in the absence of information provided by the military judge about the defense. See Phillippe, 63 M.J. at 310-11.
The interchange between the military judge and defense counsel did not lessen the military judge’s duty to explain the defense to Appellant. Nothing in the record demonstrates that defense counsel considered the defense of lack of mental responsibility; and in any ease, defense counsel’s obligation to consider possible defenses did not satisfy the military judge’s duty to conduct a proper providence inquiry directly with the accused. See Care, 18 C.M.A. at 541, 40 C.M.R. at 253. The providence inquiry centers on the special relationship between the accused and the military judge, not between the accused and counsel. See id. This relationship requires the military judge to ensure that an accused’s pleas are provident before they may be accepted. See Phillippe, 63 M.J. at 309.
Under these circumstances, the military judge abused his discretion by not completing the required plea inquiry in light of the possible defense raised during the plea colloquy. Accordingly, I would reverse the decision of the Court of Criminal Appeals.