## UNITED STATES

v.

**Larry D. HOLMES, Private First Class (E–2), U.S. Marine Corps.**

**NMCCA 200601110.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 5 May 2005.

Decided 9 July 2007.

LCDR Thomas P. Belsky, JAGC, USN, Appellate Defense Counsel.

LCDR R.W. Weiland, JAGC, USN, Appellate Government Counsel.

LT J.M. Hudson, JAGC, USN, Appellate Government Counsel.

Before VOLLENWEIDER, Senior Judge, STOLASZ, and COUCH, Appellate Military Judges.

COUCH, Judge:

The appellant was convicted, pursuant to his pleas, by a military judge sitting as a special court-martial, of three specifications of making a false official statement and one specification of wrongful appropriation, in violation of Articles 107 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 921. The appellant was sentenced to confinement for 180 days, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the findings and the sentence as adjudged, but suspended all confinement in excess of 100 days pursuant to the terms of a pretrial agreement. In an act of clemency, the convening authority suspended the bad-conduct discharge for 12 months from the date of his action.[1]

After considering the record of trial, the appellant's sole assignment of error and reply brief, and the Government's response, we conclude that the findings as to Specifications 2 and 3 of Charge I must be set aside. We will take corrective action in our decretal paragraph. Following our corrective action, we find that the findings and the sentence, as modified, are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

The appellant's sole assignment of error contends that his pleas to two of the specifications of making a false official statement are improvident as there is no evidence that the statements were "official" as required by Article 107, UCMJ, 10 U.S.C. § 907. We agree that the appellant's pleas to Specifications 2 and 3 of Charge I were improvident.

### Background

The appellant was stationed at Camp Pendleton, California, when he drove away with a car from the base "lemon lot"[2] and took it for a joy ride that included a brief jaunt into Mexico. When he attempted to re-enter the United States, the appellant was stopped at the border by a U.S. Customs agent who, as a routine matter and without reading the appellant his rights, asked to whom the car belonged. Record at 19–20. The appellant lied when he told the agent the car belonged to his cousin. This lie is the basis of the second false official statement specification.

Shortly thereafter, a California Highway Patrol officer arrived and, after reading the appellant his rights, also questioned the appellant about the car. *Id.* at 24. The appellant lied when he told the patrolman that he "purchased the car from a Hispanic male for $20." *Id.* This lie by the appellant is the basis of the third false official statement specification.

---

1. Because the bad-conduct discharge was approved by the convening authority, we still have a duty to review this case under Article 66, UCMJ, even though that portion of the sentence was suspended and later remitted.

2. A "lemon lot" is a location, common on most Marine Corps installations, where a variety of vehicles are put on display by prospective sellers for inspection by potential buyers.

Within a week the appellant deployed to Iraq, where he was interviewed by Special Agent Gomez, Criminal Investigation Division (CID), as part of an inquiry into the theft of the car.[3] The appellant stated that Special Agent Gomez questioned him about the car in Iraq because his unit at Camp Pendleton knew about the car, and that Special Agent Gomez was conducting "some sort of military investigation" as to why the appellant had the car. *Id.* at 16–17. After being read his rights, the appellant lied to Special Agent Gomez when he stated, "I gave the guy $20 for the car on Friday." *Id.* at 17–18. This lie by the appellant was the basis of the first false official statement specification.

## Standard of Review

As a predicate matter, we address some confusion as to the appropriate standard of review we should apply to our analysis of whether an appellant's guilty plea was provident. In *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F.2007), our superior court said: "'A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion.'" (quoting *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996)(citing *United States v. Gallegos*, 41 M.J. 446 (C.A.A.F. 1995))); *see also United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F.2006). By contrast, in *United States v. Pena*, 64 M.J. 259 (C.A.A.F.2007), *cert. denied*, —— U.S. ——, 127 S.Ct. 2281, 167 L.Ed.2d 1095 (2007), the Court said, "We review claims as to the providency of a plea under a *de novo* standard." *Id.* at 267 (citing *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F.2005)(military judge's legal conclusion appellant's pleas were provident reviewed *de novo*)).

There is no confusion a guilty plea will be rejected on appeal only where the record of trial shows a substantial basis in law and fact for questioning the plea. *United States v. Carr*, 65 M.J. 39, 40–41 (C.A.A.F. 2007); *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F.2004); *Phillippe*, 63 M.J.

at 309; *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002); *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991); *United States v. Logan*, 47 C.M.R. 1, 3, 1973 WL 14641 (C.M.A.1973)(hereinafter the "*Prater* substantial basis test"). For the reasons set out below, we conclude the proper standard of review for the providence of a guilty plea is abuse of discretion, where the issue is whether a factual basis exists to support the plea.

In general, "abuse of discretion" as a standard of review is commonly used in two different ways. Sometimes, "abuse of discretion" is a conclusory label, such as when it is said a lower court abused its discretion because its findings of fact were clearly erroneous or because it was mistaken on the law. 19 Moore's Federal Practice § 206.05[1] (Matthew Bender 3d ed.); *see United States v. Parker*, 62 M.J. 459, 465 (C.A.A.F.2006); *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F.1995); *United States v. Sullivan*, 42 M.J. 360, 363 (C.A.A.F.1995). In such cases, factual findings have been reviewed under a "clearly erroneous" standard, and legal determinations under a *de novo* standard. To say the lower court abused its discretion may be a technically correct usage of this "term of art," but it can obscure the true standard of review.

On the other hand, "abuse of discretion" may also indicate the appellate court will defer to a lower court's discretionary decision so long as that decision was within a range of reasonable possible decisions. 19 Moore's Federal Practice § 206.05[1]. Often, such situations arise where a lower court must apply the law to a set of facts, such as occurred in this case. The appellate court will normally review *de novo* the law applied by the lower court, and will generally reverse only a clearly erroneous factual finding. It will, however, often review the lower court's discretionary act of applying the law to the facts under a standard affording the lower court some degree of deference, though something short of the clearly erroneous standard by which it examines factual findings. Such is the case

---

3. There was discussion on the record whether Special Agent Gomez was a Naval Criminal Investigative Service (NCIS) agent or a CID agent. The appellant states he thought Special Gomez was a CID agent, and the trial counsel proffered

that the investigation was contained in a CID report. Record at 15–16. Either way, it is clear Special Agent Gomez was a military investigator, which is sufficient for our analysis of the official nature of the false statement.

when a military judge decides there is a factual basis to accept a guilty plea.

■ In reviewing the providence of the appellant's guilty pleas, we consider his colloquy with the military judge, as well as any inferences that may reasonably be drawn from it. *Carr,* 65 M.J. at 41 (citing *Hardeman,* 59 M.J. at 391). A military judge may only accept a guilty plea if there is a factual basis for it, and must reject it if the accused sets up matter inconsistent with the plea or if the plea appears improvident. Art. 45, UCMJ, 10 U.S.C. § 845; RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.); *Phillippe,* 63 M.J. at 309. In deciding whether to accept a guilty plea, a military judge has broad discretion to "err on the side of caution." *Parker,* 62 M.J. at 465 (quoting *United States v. Penister,* 25 M.J. 148, 152 (C.M.A.1987)). A military judge may not, however, arbitrarily reject a guilty plea. *Penister,* 25 M.J. at 152; *see also United States v. Johnson,* 12 M.J. 673 (A.C.M.R.1981); *United States v. Williams,* 43 C.M.R. 579, 582, 1970 WL 7496 (A.C.M.R.1970).

■ Clearly, there are situations in which no military judge could accept an accused's plea, because it lacked a factual basis or because of matters in the record inconsistent with the plea. At the other extreme, there are situations where there is clearly more than enough factual support for a plea, and in those cases, the military judge must accept the plea. In between those two extremes, however, the military judge has discretion to accept or reject the plea. Because the military judge exercises discretion, the decision to accept a guilty plea is entitled to deference on appellate review, and it is appropriate to review that decision for abuse of discretion.

In a situation where a lower court was simply wrong on its interpretation of the law, a *de novo* review is entirely appropriate, as the court need not be given any deference as to whether it applies correctly the current state of the law. This was the case in *Harris,* where our superior court was asked to review, in light of Article 73, UCMJ, 10 U.S.C. § 873, and R.C.M. 1210(f), the purely legal issue of a petition for a new trial when

the appellant had already pled guilty. 61 M.J. at 398.

Whether a factual basis exists for a guilty plea is not a strict legal question, but rather a mixed question of law and fact. Application of *de novo* review to a mixed question of law and fact is inconsistent with the *Prater* substantial basis test, which requires "a substantial basis in law *and* fact for questioning the plea." *Prater,* 32 M.J. at 436 (emphasis added). If appellate review of the providence of a guilty plea was truly *de novo,* the appellate court would not look for a substantial basis to question the plea, but instead would ask itself whether it would have accepted the plea on the record before it.

This case presents a mixed question of law and fact; that is, whether a factual basis exists to conclude that the appellant's false statements were official under Article 107, UCMJ. Therefore, we will review the military judge's decision to accept the appellant's guilty pleas to that offense for an abuse of discretion. *Phillippe,* 63 M.J. at 309 (citations omitted).

### False Official Statement

Conviction of making a false official statement under Article 107, UCMJ, requires proof beyond a reasonable doubt:

(1) That the accused signed a certain official document or made a certain official statement;

(2) That the document or statement was false in certain particulars;

(3) That the accused knew it to be false at the time of signing it or making it; and

(4) That the false document or statement was made with the intent to deceive.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), Part IV, ¶ 31b. The text of the UCMJ provides that: "Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct." Art. 107, UCMJ. The Manual indicates that the term "official statements" includes all "statements made in the line of duty," but

does not define "line of duty." MCM, Part IV, ¶ 31c(1).

The appellant does not dispute that his statement to Special Agent Gomez was official, as it is well-settled in military jurisprudence that false statements made by an accused to a military investigator are generally "official" for criminal liability under Article 107. *United States v. Solis,* 46 M.J. 31, 32 (C.A.A.F.1997)(citing *United States v. Jackson,* 26 M.J. 377, 379 (C.M.A.1988)). However, the appellant does dispute the officiality of his statements to the U.S. Customs agent and the California Highway Patrol officer, and claims neither were made "in the line of duty" as interpreted by *United States v. Teffeau,* 58 M.J. 62 (C.A.A.F.2003).

In *Teffeau,* the accused and another recruiter drank alcohol with two underage female recruits. The other recruiter and one of the recruits were involved in a motor vehicle accident, killing the recruit. The accused made false statements to the civilian police who investigated the accident. *Id.* at 67–68. The court rejected "any absolute rule that statements to civilian law enforcement officials can never be official within the meaning of Article 107." *Id.* (citing *United States v. Johnson,* 39 M.J. 1033 (A.C.M.R. 1994)). Holding that the accused's false statements were official, our superior court concluded that the "entire incident and investigation bore a direct relationship to Appellant's duties and status as a Marine Corps recruiter." *Id.* at 69. The nexus between the appellant's military duties and status and the subject of the investigation was critical to the court's ruling:

> The investigation concerned potential criminal conduct involving a person or persons subject to the UCMJ. There was a *parallel military investigation* into this incident. The subject matter of the Winfield police investigation was of interest to the military and within the jurisdiction of the courts-martial system. *See Solorio v. United States* [citations omitted]. Appellant's conduct and his subsequent statements about his conduct could have, and

did, subject him to criminal liability in the military justice system for various offenses in addition to his false official statements. *Id.* (emphasis added).

■ Turning to the present case and the appellant's false statement to the U.S. Customs agent at the border crossing, we find that the appellant's plea was improvident with respect to the officiality of the statement as required under Article 107. Based upon the military judge's questions of the appellant, it is clear the court was concerned that the Customs agent did not advise the appellant of his rights before questioning. In his efforts to resolve that issue, the military judge inquired of the appellant his understanding of why the Customs agent asked him questions:

MJ: Do you believe and admit that your statement was made to a person who in receiving it was discharging the functions of his particular office?

ACC: Yes, sir.

MJ: At this point when he asked you this, *he was not conducting an investigation of any kind, was he?*

ACC: Yes, sir.

MJ: So would you agree that that might be one of the reasons that he would not need to read you your rights?

ACC: Yes, sir.

MJ: Do you understand that at that point *he probably did not suspect you of anything?*

ACC: Yes, sir.

MJ: Those are probably standard questions they ask people when they come across the border?

ACC: Yes, sir.

MJ: About who the vehicle belongs to and where they're coming from and things like (sic)?

ACC: Yes, sir.

MJ: Do you understand that those are termed investigative stops under the law?

ACC: Yes, sir.[4]

---

4. We take this opportunity to remind military judges of the necessity to resolve such fact-dependent issues during a guilty plea by having the

accused really explain why he is guilty, rather than accepting a series of affirmative answers to

Record at 21 (emphasis added). The military judge made no attempt to establish a connection between the appellant's statement to the Customs agent and the appellant's military status or duties, and no such connection is apparent in the record.

By way of example, the military judge could have elicited the following facts in order to evaluate whether the appellant's false statement to the Customs agent bore a relationship to his military duties and status and was, therefore, official:

1. Was the Customs agent aware of the appellant's military status at the time of questioning?

2. Was the appellant in uniform while he was questioned by the Customs agent?

3. At the time of questioning, was there a parallel military investigation being conducted into the theft of the car from the lemon lot?

4. Was the appellant's theft of the car of interest to the military and within the jurisdiction of the courts-martial system?

5. What was the appellant's duty status when he wrongfully appropriated the car?

6. What was the appellant's duty status at the time he made the false statement to the Customs agent?

7. Did the appellant's theft of the car in any way involve his performance of military duties?

8. Did the appellant's theft of the car in any way involve his military responsibilities?

See *Teffeau*, 58 M.J. at 69; *see also LtCol Colby C. Vokey, Article 107, UCMJ: Do False Statements Really Have to Be Official?*, 135 MIL. L.REV. 1, 42–3 (2004).

The military judge did ask the trial defense counsel if he believed "there's any defense that applies there, the fact that it's not an official statement because it's the Border Patrol or somebody else?" Record at 25. Apparently satisfied with the defense counsel's negative response, the military judge did not discuss the official nature of the appellant's false statement again.

leading questions that call for legal conclusions.

In light of our responsibility to ensure the legal and factual sufficiency of the appellant's guilty plea, we do not consider the defense counsel's negative response to constitute waiver of the factual issue whether the false statement was official. Realizing that rejection of a guilty plea "must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty," we decline to apply waiver "when an error prejudicial to the substantial rights of the appellant occurs." *United States v. Dawson*, 50 M.J. 599 (N.M.Ct.Crim.App.1999)(citing R.C.M. 910(j) and Art. 59(a), UCMJ). The providence inquiry must establish not only that the accused himself believes he is guilty, but also that the factual circumstances objectively support the plea. *Harris*, 61 M.J. at 398; *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A.1994); *United States v. Care*, 40 C.M.R. 247, 253, 1969 WL 6059 (C.M.A.1969). It did not do so in this case.

Consistent with our superior court's holding in *Teffeau*, we believe the deciding factor for determining the officiality of the appellant's false statement is whether a nexus exists between the basis for the Customs agent's question and the appellant's military duties and status. 58 M.J. at 69. The record before us reflects that the basis for the Customs agent's question to the appellant was solely related to the agent's duties to protect the U.S. border with Mexico, and were unrelated to the appellant's military duties and status. Thus, there is no basis to conclude that the Customs agent's questions involved a subject matter of interest to the military and within the jurisdiction of the courts-martial system. *Id.* (citing *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987)). *Accord United States v. Morgan*, 65 M.J. 616 (N.M.Ct.Crim. App.2007). The providence inquiry did not establish the officiality of the appellant's false statement to the Customs agent. We conclude that the appellant's guilty plea to Specification 2 of Charge I lacks a substantial basis in law and fact, and was therefore improvident. *Jordan*, 57 M.J. at 238 (citing *Prater*, 32 M.J. at 436).

Jordan, 57 M.J. at 239.

■ For the same reasons, we find that the appellant's plea to making a false official statement to the California Highway Patrol officer was also improvident. The record does not state how or why the highway patrolman was summoned to the border crossing, or why he asked any questions of the appellant. There was no inquiry as to whether a parallel military investigation into the theft of the car was underway. There is no indication how the patrol officer's questions were related to the appellant's military duties or status, or if the patrol officer even knew the appellant was a member of the armed forces. Again, the providence inquiry did not establish the officiality of the appellant's false statement to the highway patrolman. We conclude that the appellant's guilty plea to Specification 3 of Charge I also lacks a substantial basis in law and fact, and was therefore improvident.

As a result of our action on the findings, we have reassessed the sentence in accordance with the principles of *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F.2006); *United States v. Cook*, 48 M.J. 434 (C.A.A.F.1998); *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990); and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986).

### Conclusion

The findings of guilty to Specifications 2 and 3 of Charge I are set aside and the specifications are dismissed. We decline to order a rehearing because the convening authority suspended the bad-conduct discharge, which has been remitted. Accordingly, we affirm the remaining findings of guilty and only so much of the sentence as approved by the convening authority as includes confinement for 180 days and reduction to pay grade E–1, finding this sentence to be no greater than that which would have been imposed if there had been no error.

Senior Judge VOLLENWEIDER and Judge STOLASZ concur.