# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, R.Q. WARD, T.P. BELSKY**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**TITUS R. MAYO, JR.**
**CULINARY SPECIALIST SEAMAN (E-3), U.S. NAVY**

**NMCCA 201400107**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 25 November 2013.
**Military Judge:** CAPT B.L. Payton-O'Brien, JAGC, USN.
**Convening Authority:** Commanding Officer, USS CARL VINSON (CVN 70).
**Staff Judge Advocate's Recommendation:** LCDR M.V. Rosen, JAGC, USN.
**For Appellant:** Maj Jeffrey Stephens, USMCR.
**For Appellee:** Lt Ann E. Dingle, JAGC, USN.

**14 October 2014**

---

## OPINION OF THE COURT

---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

BELSKY, Judge:

A military judge, sitting as a special court-martial, convicted the appellant pursuant to his pleas of one specification of unauthorized absence, one specification of missing movement, one specification of disrespect towards a superior commissioned officer, three specifications of making a false official statement, two specifications of wrongful use of marijuana, one specification of larceny, and one specification

of wrongful cohabitation, in violation of Articles 86, 87, 89, 107, 112a, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 887, 889, 907, 912a, 921, and 934.  The adjudged sentence included 200 days' confinement, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged.

On appeal, the appellant raises the following four assignments of error:

APPELLANT'S GUILTY PLEA TO MISSING MOVEMENT IN VIOLATION OF ARTICLE 87, UCMJ, WAS IMPROVIDENT.

APPELLANT'S GUILTY PLEAS TO FALSE OFFICIAL STATEMENTS IN VIOLATION OF ARTICLE 107, UCMJ, WERE IMPROVIDENT.

APPELLANT'S SENTENCE WAS INAPPROPRIATELY SEVERE FOR THIS OFFENDER AND HIS OFFENSES.

THE CONVENING AUTHORITY'S ACTION IN THIS CASE ERRONEOUSLY MISSTATES APPELLANT'S PLEA TO CHARGE II AND ITS SOLE SPECIFICATION AS "NOT GUILTY" WHEN APPELLANT PLED GUILTY TO THIS CHARGE AND SPECIFICATION.

In its answer, the Government rightfully concedes the error that the appellant notes concerning the CA's action, and we will order corrective action regarding this issue in our decretal paragraph.  We will address below the appellant's remaining assignments of error.

**Background**

The following facts were established during the appellant's providence inquiry, and from the Stipulation of Fact entered into evidence as Prosecution Exhibit 1.

At the time of the offenses, the appellant was a culinary specialist seaman attached to USS CARL VINSON (CVN 70), home ported at Naval Air Station North Island, Coronado, California. As an unmarried E-3, the appellant was required to live aboard the ship, and was not permitted to collect Basic Allowance for Housing (BAH).  If married, the appellant would be entitled to BAH at the with dependents rate, and would be eligible to live in military offered housing.  In an effort to illegally obtain BAH, the appellant married AM, a high school friend from the appellant's home town of St. Louis, Missouri.  The appellant's

2

sole intention in marrying AM was to receive BAH.  AM never moved from St. Louis to be with the appellant, and the appellant never provided any financial support to AM.  Nonetheless, the appellant submitted his marriage certificate to his local Personnel Support Detachment and, on 22 June 2012, he began receiving BAH at the with dependents rate.  Between June 2012 and September 2013, the appellant received approximately $27,585.03 in BAH.

At some point after his marriage to AM, the appellant began dating ER.  Eventually, ER became pregnant.  In an effort to find a place for the two of them to live, the appellant applied for military housing.  As part of that process, the appellant signed and submitted a lease agreement to a property manager with Lincoln Military Housing (LMH), a private contractor responsible for managing military housing in the San Diego area. In the agreement, the appellant stated that his wife, AM, would reside with him.  However, the appellant had no intention of living with AM, but instead submitted the lease agreement with the sole intention of having his girlfriend, ER, live with him. After submitting the lease to LMH, the appellant and ER moved into military housing and began holding themselves out as husband and wife.

The appellant also made false statements to his division officer (DIVO) and his leading chief petty officer (LCPO) regarding ER.  On 5 March 2013, the appellant asked his DIVO for early liberty, claiming that his pregnant wife was bleeding, cramping, and needed to go to the hospital.  In reality, the appellant was referring to his girlfriend, ER.  The following day, the appellant asked his LCPO for liberty, claiming that his wife had suffered a miscarriage, and that he needed to attend to her medical condition.  Again, the appellant was referring to ER and not his wife.

Finally, with regard to the missing movement offense, the appellant knew that the CARL VINSON was scheduled to get underway on 10 September 2013.  He also knew he was required to report to the ship at 0430 hours on 10 September in preparation to get underway.  At approximately 2000 hours on 9 September, the appellant went to the emergency department at Balboa Naval Hospital complaining of pain in his foot.  Personnel at the hospital declined to see the appellant and instructed him to visit his primary care physician or the duty hospital corpsman on board his ship.  Instead of following this advice, the appellant went to a civilian hospital in San Diego, where he was treated for a slight fracture and a sprain in his foot.  The

3

hospital discharged the appellant at approximately 0800 on 10 September, by which time CARL VINSON had already gotten underway.

## Discussion

### 1. Providence of the Appellant's Guilty Pleas

This court reviews a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). An abuse of discretion occurs when there is a substantial basis in law or fact for questioning the guilty plea. *Id.* This substantial basis test requires us to look at "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.* at 322. On appeal, the appellant alleges that there is a substantial basis for questioning his guilty pleas to the sole specification of missing movement by neglect and the three specifications of false official statements. We will address each plea in turn.

### a. Guilty plea to missing movement by neglect

The appellant alleges that his plea to missing movement is improvident because the facts elicited do not establish negligence. In the alternative, he argues that his statements raised the possible defense of duress. We disagree.

The appellant's answers during his providence inquiry, and the record as a whole, establish that his conduct was negligent. Before eliciting a factual basis from the appellant, the military judge stated the elements of missing movement, and defined for the appellant the term "through neglect." The appellant acknowledged that he understood the elements of the offense and the term "through neglect," and agreed that they accurately described his conduct.

During his providence inquiry, the appellant acknowledged that he could have avoided missing movement if he followed the advice of the medical personnel at the Balboa Emergency Department and went to see the duty corpsman on board his ship. He acknowledged that, although his foot was in pain, there was no pressing need for him to go to a civilian hospital for treatment rather than his ship, and that medical personnel were available on the ship even at the late hour in question to attend to the appellant. Further, the appellant stipulated that

4

his foot injury did not prevent him from moving with his ship. PE 1 at 8. Finally, there is no evidence that the appellant made any effort to contact a member of his command once he realized that he would not be discharged in time to make his ship's movement. In short, as the appellant admitted, only his own lack of care prevented him from making movement with his ship. Consequently, we find an adequate factual predicate for the element of neglect.

Similarly, we do not find that the record raises a potential duress defense such that the appellant's plea is called into question. It is an established part of the guilty plea process that if an accused's comments, or other matters in the record, "sets up matter raising a possible defense, then the military judge is obligated to make further inquiry to resolve any apparent ambiguity or inconsistency." *United States v. Phillippe*, 63 M.J. 307, 310 (C.A.A.F. 2006) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). A failure to engage in this inquiry constitutes a substantial basis in law or fact for questioning the guilty plea. *Id.* at 311. However, once the military judge has accepted the pleas and entered findings, an appellate court will not reverse those findings and reject the plea unless it finds a substantial conflict between the pleas and the accused's statements or other evidence of record. *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007).

In this case, the appellant stated during his providence inquiry that he was "held" at the civilian hospital for several hours. He now avers that this singular statement fairly raised the possible defense of duress and that the military judge should have resolved this apparent inconsistency before accepting the appellant's plea. We disagree.

As an initial mater, the appellant misinterprets the applicability of the duress defense.[1] The defense of duress applies only when the accused has "a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act." RULE FOR COURTS-MARTIAL 916(h),

---

[1] If anything, the appellant's claim that the hospital "held" him for several hours would raise the possible defenses of accident or inability. *See* RULE FOR COURTS-MARTIAL 916(f) and (i), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). However, for the reasons stated in this opinion, the record makes clear that the appellant's missing movement was the result of nothing more than his own neglect, and nothing in the record required the military judge to discuss these possible defenses with the appellant.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  If the accused has a reasonable opportunity to avoid committing the offense without subjecting himself or another to the harm threatened, the defense of duress does not exist.  *Id.*

In the appellant's case, there is no evidence that the appellant faced an immediately perceived threat of serious bodily injury if he did not seek immediate medical attention for his foot at the civilian hospital instead of his duty corpsman on board his ship.  Indeed, his own statements during the providence inquiry belie his claim of duress.  Throughout the inquiry, the appellant stated that his foot injury was not so severe that he could not have had it treated on the ship, even at the late hour in question.  There was nothing preventing him from returning to the ship to see the duty corpsman, and he admitted he simply made the ill-advised choice to go to a civilian hospital.  These facts do not raise even a "mere possibility" that the appellant acted under duress (or any other possible defense), and the military judge therefore was not required to inquire further.  *See United States v. Ferguson*, 68 M.J. 431, 434 (C.A.A.F. 2010) (stating that it "'will not overturn a military judge's acceptance of a guilty plea based on a 'mere possibility' of a defense.'" (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980)).  Accordingly, we do not find a substantial basis in law or fact for questioning the appellant's guilty plea to this offense.

### b. Guilty pleas to false official statements

The appellant also challenges the providence of his pleas to making false official statements to the property manager for LMH, his DIVO, and LCPO, alleging that the statement to the LMH employee was not official for purposes of Article 107, UCMJ, and that his statements to his DIVO and LCPO were the result of duress.  Again, we disagree.

### i. Whether the statement to LMH was "official"

The scope of what constitutes an "official" statement for purposes of Article 107, UCMJ, has been an ongoing source of litigation in the military justice system.  *See United States v. Passut*, 73 M.J. 27 (C.A.A.F. 2014); *United States v. Spicer*, 71 M.J. 470 (C.A.A.F. 2013); *United States v. Day*, 66 M.J. 172 (C.A.A.F. 2008); *United States v. Teffeau*, 58 M.J. 62 (C.A.A.F. 2003); *United States v. Holmes*, 65 M.J. 684 (N.M.Ct.Crim.App. 2007).  In *Spicer*, the Court of Appeals for the Armed Forces explained that a statement can be official depending on either

the position of the speaker or the listener "at the time statement is made." *Id.* *Spicer* explained that a statement can be official if the speaker was "acting in the line of duty" when making the statement, or the statement "directly relat[ed] to the speaker's official military duties." *Id.* Additionally, the statement could be official if it was made to "a military member carrying out a military duty," or made to a civilian "necessarily performing a military function." *Id.* Relying on *Spicer*, the appellant alleges on appeal that the false statement he made on the lease agreement he submitted to LMH was not official because the LMH employee to whom the appellant submitted the lease agreement was not performing a military function at the time the appellant submitted the agreement. Based on the record before us, we do not agree.[2]

Reviewing the appellant's plea, we first note that the military judge correctly stated all the elements of the offense, and the appellant indicated both that he understood the elements and that they correctly described his conduct. While the military judge did not expressly define the term "official" for the appellant, or explain to him *Spicer's* language concerning the scope of the term official, "'it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.'" *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003) (quoting *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992)).[3] During his providence inquiry, the appellant acknowledged that he submitted the lease containing the false statement in order to receive "military housing." Record at 44. He also admitted that the

---

[2] The appellant also alleges that his statement was not official under Article 107, UCMJ, because the statement "did not affect his entitlements to a housing allowance or his pay in any way." Appellant's Brief of 11 Jun 2014 at 212. We need not address this argument, however, since we find a sufficient factual predicate to establish that the statement was official because the recipient was engaged in the performance of a military function at the time he or she received the statement.

[3] Since *Spicer*, the drafters of the Military Judge's Benchbook have updated paragraph 3-31-1 of the Benchbook, which addresses Article 107, UCMJ, to include the language from *Spicer* explaining the term "official." *See* Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 at 350-51 (10 Sep 2014). We hasten to note, however, that the Benchbook, while providing helpful guidance, is *nonbinding*, *see United States v. Carson*, 57 M.J. 410, 413 (C.A.A.F. 2002), and a military judge's failure during a guilty plea to provide an accused with a particular definition contained in the Benchbook is not fatal provided, again, it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty. *Redlinski*, 58 M.J. at 119; *see also United States v. Caudill*, 65 M.J. 756,758-59 (N.M.Ct.Crim.App. 2007).

7

housing in question was "solely" for "military members [to] live in." *Id*. at 46. Further, the appellant acknowledged that the person to whom he handed the lease agreement was "discharging the functions of their particular office as property manager of [LMH]," and that this person would provide him with military housing if he submitted the lease containing the false statement. *Id*. at 47-48. Finally, the appellant stipulated he knew that unmarried service members and geo-bachelors were not permitted to live in LMH, and that he intended to create the false impression that his wife was living with him in order to qualify for military housing. These facts provide "objective[] support" for the conclusion that the statement in question was, as the appellant agreed, official under Article 107, UCMJ. *See United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (noting that the factual predicate for a plea is "sufficiently established if 'the factual circumstances as revealed by the accused himself objectively support that plea.'" (quoting *Davenport*, 9 M.J. at 367)). Accordingly, we find no substantial basis in law or fact to question the appellant's guilty plea to this offense.

## ii. Whether the appellant's statements to his DIVO and LCPO were the result of duress

We also do not find that the appellant's false statements to his DIVO and LCPO were the result of duress, as the appellant now alleges.

The appellant falsely told his DIVO and LCPO that he needed leave to attend to his wife's emergent medical needs, when in reality he wanted to attend to his girlfriend, ER. He made these false statements because he believed his superiors would not grant him leave if they knew the truth. There is nothing in the record, other than the appellant's subjective belief, to even imply that the appellant needed to lie to his superiors to obtain leave to be with his girlfriend. Quite simply the appellant could have "avoid[ed] committing the offense" and told his superiors the truth and requested leave. R.C.M. 916(h). In light of these facts, as well as the remaining facts contained in the record, we conclude that the appellant's statements did

8

not raise the possibility of a duress defense, and the military judge did not abuse her discretion in accepting his plea.[4]

## 2. Sentence Appropriateness

Under Article 66(c), UCMJ, we independently review sentences within our purview and only approve that part of a sentence which we find should be approved. *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

The appellant argues that his sentence was inappropriately severe given his conduct. However, the appellant's conduct spanned more than a year during which he lied to qualify for military housing, unjustly received more than $27,000 in BAH, and lied to his superiors. Based on the scope and nature of this conduct we have no reservations concluding that 200 days' confinement, reduction to pay grade E-1, and a bad-conduct discharge at a special court-martial was not an inappropriately severe sentence. Granting sentence relief at this point would be to engage in clemency, a prerogative reserved for the CA, and we decline to do so. *Healy*, 26 M.J. at 395-96.

## Conclusion

The findings and sentence as approved by the CA are affirmed. We direct that the supplemental court-martial order

---

[4] The appellant also claims that vague references he made during his unsworn statement to attempting suicide also raised the possibility of a duress defense to these specifications. While our superior court has acknowledged that a threat of suicide may, depending on the circumstances, give rise to a duress defense, *see United States v. Hayes*, 70 M.J. 454, 461-63 (C.A.A.F. 2012), such circumstances are not present in this case. In any event, even if such statements gave rise to a possible duress defense, the military judge, after hearing those statements, reopened the providence inquiry, explained the defense of duress to the appellant as it related to several of his pleas, and obtained assurances from the appellant and his counsel that the defense was not applicable. Thus, we are satisfied the military judge fulfilled her responsibilities and did not abuse her discretion in accepting the appellant's pleas.

reflect that the appellant plead guilty to the specification under Charge II.

Senior Judge FISCHER and Senior Judge WARD concur.

For the Court


R.H. TROIDL
Clerk of Court