# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**STEVEN P. SATHAM**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201500078**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 31 October 2014.
**Military Judge:** LtCol E.A. Harvey, USMC.
**Convening Authority:** Commanding Officer, 1st Battalion, 11th Marines, 1st Marine Division, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** LtCol D.R. Kazmier, USMC.
**For Appellant:** CAPT James A. Talbert, JAGC, USN.
**For Appellee:** LCDR Justin C. Henderson, JAGC, USN; Capt Matthew Harris, USMC.

**10 November 2015**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a special court-martial, convicted the appellant, in accordance with his pleas, of one specification of making a false official statement, two specifications of larceny, and three specifications of failing to pay a just debt, in violation of Articles 107, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 921, and

934.  The military judge sentenced the appellant to six months' confinement, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority approved the sentence as adjudged and, pursuant to a pretrial agreement, suspended all confinement in excess of 60 days.

The appellant raises one assignment of error, claiming that the military judge abused her discretion by accepting the appellant's guilty pleas to larceny since there was insufficient evidence to support a finding that the appellant stole the property of the victim alleged in the specifications.[1]  We agree, and will order relief in our decretal paragraph.

After carefully considering the record of trial, the submissions of the parties, and the appellant's assignment of error, we are convinced that, following our corrective action, the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains.  Arts. 59(a) and 66(c), UCMJ.

## Background

Due to ongoing financial struggles related to gambling, the appellant was at one point living in the home of Corporal (Cpl) F.  The appellant repaid this hospitality by secretly and without permission photographing Cpl F's ATM-debit card and using the numbers thereon to obtain two Western Union wire transfers of $1000.00 each from Cpl F's bank account.  The appellant received the proceeds of the transfers in cash, first at the Marine Corps Exchange, then at a local casino.  Cpl F learned of the transfers after Cpl F attempted to use his ATM-debit card, but was declined.  He immediately reported the loss to his bank, who, within days, restored the missing funds to the account.  The record does not reveal whether the loss was ultimately borne by the bank or Western Union.

During the ensuing command investigation, the appellant falsely claimed he was living with a friend in San Diego.  In truth, when not at Cpl F's home, the appellant was living out of his car.  The investigation also revealed that the appellant had borrowed large sums of money from junior Marines he mentored or

---

[1] The appellant presents this issue as one of factual sufficiency.  When factual issues arise in the context of a guilty plea, "the issue must be analyzed in terms of providence of [the] plea, not sufficiency of the evidence."  *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996).  Thus, we reframe the alleged error and review accordingly.

supervised, and that, through evasion and excuses, he had dishonorably failed to repay these debts when due.

In its sentencing case, the Government presented testimony of Cpl F and the appellant's supervisor, Gunnery Sergeant (GySgt) P. While both discussed the effects of the alleged larceny on the unit, GySgt P also described the negative impact of the appellant's Article 134 offenses. The defense presented evidence of the appellant's otherwise outstanding performance and high potential for rehabilitation, as well as the steps he has taken to repay the debts. One witness described the appellant's heroic and selfless actions in combat that resulted in his receiving the Navy and Marine Corps Achievement Medal with Combat "V."

## Discussion

The appellant argues that Cpl F was not the victim of the alleged larcenies, and, therefore, the military judge erred in accepting the appellant's pleas to the specifications under Charge II. The Government counters that: first, the appellant's unconditional guilty plea waived the issue; and, second, even if the issue was not waived, Cpl F is the proper victim here, as he had a superior possessory interest to the funds in his account.

*Waiver.*

The Government's argument is tantamount to saying that an unconditional guilty plea deprives this court of its ability to review the factual basis for the plea. We reject this position, as it would undermine our responsibility to ensure the providence inquiry establishes not only that the accused himself believes he is guilty, but also that the factual circumstances objectively support the plea. *See United States v. Holmes*, 65 M.J. 684, 689 (N.M.Ct.Crim.App. 2007) (holding that appellant's belief and in-court admission that a statement was "official" did not waive appellate review of the issue).

*Providence of Plea.*

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F. 2008). A military judge abuses this discretion if, during the providence inquiry, she does not ensure the appellant provide an adequate factual basis to support the plea. *See United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

3

In establishing a factual basis, the military judge must explain each element of the offense charged and question "the accused about what he did or did not do, and what he intended . . . ." *United States v. Davenport*, 9 M.J. 364, 366 (C.M.A. 1980). In doing so, "[i]t is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty." *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002) (citation omitted). We will not reject the plea unless there is a substantial basis in law or fact for questioning the guilty plea. *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)).

The appellant was charged with stealing, on each of two consecutive days, "$1000.00, U.S. currency, the property of [Cpl F], U.S. Marine Corps."[2] At trial, the parties stipulated that the money was taken "directly out of [Cpl F's] account," that the ATM-debit card "is not a line of credit extended by a financial institution or bank," and that "[Cpl F] is the victim of this larceny."[3] During the *Care* inquiry, the military judge listed among the elements of the two Article 121 offenses that the funds were obtained "from the possession of Pacific Marine Credit Union" and "belonged to [Cpl F]."[4] The military judge defined "possession" to be "[c]are, custody, management or control," and "owner" to be any person or entity, who at the time of the obtaining, had a greater right to possession than [the appellant]."[5] The appellant subsequently agreed with the military judge's statements that the funds were wrongfully obtained from "the possession of Pacific Marine Credit Union" and taken "from [Cpl F's] account."[6] There was no further inquiry on this point.

The appellant's agreement with the military judge's legal conclusion regarding the victim's identity in this case does not make that conclusion correct. The Court of Appeals for the Armed Forces (CAAF) has consistently held that, absent unusual circumstances, an appellant's unauthorized use of a debit card to obtain goods is a larceny of those goods from the bank or merchant, not the individual account holder. *See United States*

---

[2] Charge Sheet.

[3] Prosecution Exhibit 11 (Stipulation of Fact) at 1.

[4] Record at 74 and 78.

[5] *Id*.

[6] *Id*. at 80.

4

*v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010); *see also United States v. Endsley*, 74 M.J. 216 (C.A.A.F. 2015) (summary disposition) and *United States v. Gaskill*, 73 M.J. 207 (C.A.A.F. 2014) (summary disposition). *Lubasky* exemplifies one such unusual circumstance: where the appellant has a legal, if limited, right to access the account's funds. In *Lubasky*, the appellant, under the guise of assisting the victim, was named a co-owner of the victim's account. The appellant then abused that status to remove funds for his own personal, unauthorized use. This was not the case in either *Gaskill* or *Endsley*, whose facts closely mirror those in the present case.

The Government seeks to distinguish *Gaskill* and *Endsley* in that they dealt with the theft of goods, not currency. But in this context, the distinction is meaningless. The CAAF in *Lubasky* found the following language from the Manual for Courts-Martial instructive: "Wrongfully engaging in a credit, debit, or electronic transaction to obtain goods or money is an obtaining-type larceny by false pretense. Such use to obtain goods is usually a larceny of those goods from the merchant offering them." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Part IV, ¶46(c)(1)(h)(vi).[7] We find the next sentence of that subparagraph no less instructive: "Such use to obtain *money* or a negotiable instrument (e.g., withdrawing cash from an automated teller or a cash advance from a bank) is usually a larceny of money from the entity presenting the money or a negotiable instrument."[8] *Id.* (emphasis added). Whether the object of the larcenous transaction is a new toaster or a bundle of cash is irrelevant—absent unusual circumstances, such as in *Lubasky*, the account owner has no superior interest in either item.

In both *Endsley* and *Gaskill* the CAAF noted that "the proper victim[s]" in those cases were "the merchants who provided the goods and services . . . , not the debit cardholder," yet "the charge sheet, stipulation of fact, and the providence inquiry focused on the [account holders] as the victim[s], and there was no discussion on the record whether the merchants were victimized." *Endsley*, 74 M.J. at 216; *Gaskill*, 73 M.J. at 207. Such is the case here, except that Cpl F being reimbursed by his bank further strengthens the argument that the bank or Western Union, not Cpl F, was the "proper victim."

---

[7] The same language is in the current edition of the Manual at Part IV, ¶ 46c(1)(i)(vi).

[8] *Id.*

We thus find there is a substantial basis in law for questioning the pleas of guilty to both specifications under Charge II. Accordingly, we find the military judge abused her discretion in accepting those pleas.

**Sentence Reassessment**

Courts of Criminal Appeals (CCAs) can often "modify sentences 'more expeditiously, more intelligently, and more fairly' than a new court-martial[.]" *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013) (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)). In such cases, CCAs "act with broad discretion when reassessing sentences," and the CAAF "will only disturb the [lower court's] reassessment in order to prevent obvious miscarriages of justice or abuses of discretion." *Id.* (citations and internal quotation marks omitted).

Reassessing a sentence is only appropriate if we are able to reliably determine that, absent the error, the sentence would have been at least of a certain magnitude. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000). A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

We base these determinations on the totality of the circumstances of each case, guided by the following "illustrative, but not dispositive, points of analysis":

(1) Whether there has been a dramatic change in the penalty landscape or exposure.

(2) Whether sentencing was by members or a military judge alone.

(3) Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

6

*Winckelmann*, 73 M.J. at 15-16.

Under all the circumstances presented, we find that we can reassess the sentence and that it is appropriate for us to do so. Although the two larcenies were far more serious than the remaining offenses, and the preponderance of the Government's sentencing evidence would no longer be relevant,[9] other factors favor reassessment by this court. First, the appellant elected to be sentenced by a military judge. We are more likely to be certain of what sentence the military judge would have imposed as opposed to members. Second, we have extensive experience and familiarity with the remaining convictions, as none presents a novel issue in aggravation. Third, the evidence in aggravation regarding the effect of the appellant's debts on unit performance remains. Taking these facts as a whole, we can confidently and reliably determine that, absent the error, the military judge would have sentenced the appellant to at least confinement for 60 days and reduction to pay grade E-3. Finally, we conclude that a sentence of confinement and reduction in rank is an appropriate punishment for the remaining offenses and this offender, but that a bad-conduct discharge is not——thus satisfying the *Sales* requirement that the reassessed sentence not only be purged of error, but appropriate. *Sales*, 22 M.J. at 308.

## Conclusion

The findings of guilt as to Charge II and its specifications are set aside and Charge II and its specifications are dismissed. The remaining findings of guilty are affirmed. We affirm only so much of the sentence as includes 60 days' confinement and reduction to pay grade E-3.

For the Court

R.H. TROIDL
Clerk of Court

---

[9] The Government argues that evidence of the larcenies would still be admissible under RULE FOR COURTS-MARTIAL 1001(B)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), to show why the appellant lied regarding his living arrangements. While this may be correct, the evidence would, at most, only be relevant to show a significant adverse impact on the command's investigation, not a financial or emotional impact on Cpl F.